Blaine Bookey (SBN 267596)
Center for Gender and Refugee Studies
200 McAllister Street
San Francisco, CA 94102
Telephone: 415.703.8202
Facsimile: 415. 581.8824
bookeybl@uclawsf.edu

Fatma Marouf (SBN 222732)*
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu

Amber Qureshi*
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd., PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com

Ahilan Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Tel: (310) 825-1029
arulanantham@law.ucla.edu

Elora Mukherjee*
Jerome L. Greene Clinical Professor of Law
Columbia Law School
Morningside Heights Legal Services
435 W. 116th Street, Room 831
New York, NY 10027
Tel: (212) 854-4291
emukherjee@law.columbia.edu

*Counsel for Amici Curiae*
(all counsel are in their individual capacities)

*Not admitted in this Court

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STANFORD DAILY PUBLISHING CORPS, *et al.,*<br><br>               Plaintiffs,<br><br>vs.<br><br>RUBIO, *et al.,*<br>               Defendants. | Case No.: 5:25-cv-06618-NW<br><br>**MOTION OF *AMICI CURIAE* IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS FOR LEAVE TO FILE BRIEF IN SUPPORT OF PLAINTIFFS**<br><br>Date: November 19, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 3, 5th Floor<br><br>The Honorable Noël Wise |

- 1 -

MOTION OF AMICI CURIAE IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS FOR LEAVE
TO FILE BRIEF IN SUPPORT OF PLAINTIFFS

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE THAT the undersigned immigration lawyers, law professors, and

3   scholars, move for leave to file a brief as amici curiae in support of Plaintiffs' Motion for Summary

4   Judgment. A copy of the proposed amicus brief, which provides data on the historical usage of the

5   foreign policy deportability ground and argues that the ground is unconstitutional, is submitted with

6   this motion as Exhibit A. Counsel for the parties have consented to the relief sought in this motion

7   and to the filing of a brief.

8       The district court has "broad discretion" to determine when leave to file an amicus brief is

9   appropriate. *See Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds

10  by Sandin v. Conner*, 515 U.S. 472 (1995), *as recognized by Montijo v. Swaney*, 754 F.App'x 522,

11  524 (9th Cir. 2018) (unpublished). "District courts frequently welcome amicus briefs from non-

12  parties concerning legal issues that have potential ramifications beyond the parties directly involved

13  or if the amicus has 'unique information or perspective that can help the court beyond the help that

14  the lawyers for the parties are able to provide.'" *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,

15  355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (quoting *Cobell v. Norton*, 246 F. Supp. 2d 59, 62

16  (D.D.C. 2003)).

17      Here, proposed amici have "unique information or perspective" that can be of assistance to

18  the court. Proposed amici are over 100 leading lawyers, law professors, and scholars who practice,

19  write about, research, and teach immigration law.[1] Amici collectively have many centuries of

20  experience representing individuals at all stages of their immigration proceedings and in federal

21  court.  Regardless of their differing views on recent campus protests and the war in the Middle East,

22  amici are united (1) in finding that the government's reliance on 8 U.S.C. § 1227(a)(4)(C)(i) to

23  deport a lawful permanent resident for political speech appears to be unprecedented as of early

24  March 2025; and (2) in concluding that 8 U.S.C. § 1227(a)(4)(C)(i) is unconstitutional.

25

26  _____

27  [1] A list of amici is set forth in in the Addendum at the end of the proposed *amicus* brief. The
    positions taken in this brief are those of amici alone and should not be attributed to any institution
28  with which they are or have been affiliated.

Proposed amici have a strong "interest" in the fair and correct application of immigration law in this case. The proposed amicus brief highlights the unprecedented nature of the government's reliance on 8 U.S.C. 1227(a)(4)(C)(i) to deport noncitizens for political speech, drawing on amici's vast collective experience. Based on publicly available data from the Executive Office of Immigration Review (EOIR), the proposed *amicus* brief demonstrates that, out of 11.7 million cases, DHS has invoked INA § 241(a)(4)(C)(i) or INA § 237(a)(4)(C)(i) as a removal charge in *only fourteen cases* prior to early March 2025. In just seven of these fourteen cases, the foreign policy deportability ground was the only charge alleged throughout the proceeding, and only three individuals charged under this ground were ultimately ordered removed or deported. That amounts to fewer than one person ordered removed *per decade* under this provision prior to early March 2025. What's more, nearly all of these cases arose in the distant past, shortly after the provision was enacted. Focusing on the last 25 years up through early March 2025, the EOIR data reflects that INA § 237(a)(4)(C) has been invoked only *four times*, and *only twice* has it been the only charge alleged throughout the proceeding.

Additionally, the proposed brief elaborates on the arguments that Section 1227(a)(4)(C) is unconstitutional. Specifically, the brief argues that this deportability ground is facially invalid under the void-for-vagueness doctrine, deprives noncitizens of a meaningful opportunity to be heard in violation of due process, and violates the First Amendment. Amici include scholars who have written extensively about the void-for-vagueness doctrine and other due process issues in the immigration context, as well as immigrants' First Amendment rights. Amici have also personally observed the chilling effects on their campuses following the arrests of students and graduates charged with the foreign policy deportability ground.

The proposed brief offers non-duplicative insights into the foreign policy deportability ground and its use to arrest and detain a noncitizen for political speech, beyond that submitted by

the parties. Proposed amici's unique additional data and legal analysis may assist the Court. In short, amici have a strong interest in the outcome of this case. Allowing the federal government to target immigrants based on 8 U.S.C. § 1227(a)(4)(C)(i) will have devastating effects on immigrants, upend the practice of immigration law, and chill protected First Amendment speech not just on campuses but in communities nationwide.

Based on the foregoing, proposed amici respectfully request that the Court grant this motion for leave to file an *amicus* brief and accept the accompanying proposed brief (Ex. A) for filing.

Dated: October 15, 2025

Respectfully submitted,

*/s/ Blaine Bookey*

Blaine Bookey (SBN 267596)
Center for Gender and Refugee Studies
200 McAllister Street
San Francisco, CA 94102
Telephone: 415.703.8202
Facsimile: 415. 581.8824
bookeybl@uclawsf.edu
(in her individual capacity)

Ahilan Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Tel: (310) 825-1029
arulanantham@law.ucla.edu
(in his individual capacity)

Fatma Marouf (SBN 222732)*
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

Elora Mukherjee*
Jerome L. Greene Clinical Professor of Law
Columbia Law School
Morningside Heights Legal Services, Inc.
435 W. 116th Street, Room 831
New York, NY 10027

Tel: (212) 854-4291
emukherjee@law.columbia.edu
(in her individual capacity)

Amber Qureshi*
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd., PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com
(in her individual capacity)

*Counsel for Amici Curiae*

˄*Not admitted to practice before this Court

MOTION OF AMICI CURIAE IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS FOR LEAVE TO FILE BRIEF IN SUPPORT OF PLAINTIFFS

Blaine Bookey (SBN 267596)
Center for Gender and Refugee Studies
200 McAllister Street
San Francisco, CA 94102
Telephone: 415.703.8202
Facsimile: 415. 581.8824
bookeybl@uclawsf.edu

Fatma Marouf (SBN 222732)*
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu

Amber Qureshi*
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd., PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com

Ahilan Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Tel: (310) 825-1029
arulanantham@law.ucla.edu

Elora Mukherjee*
Jerome L. Greene Clinical Professor of Law
Columbia Law School
Morningside Heights Legal Services
435 W. 116th Street, Room 831
New York, NY 10027
Tel: (212) 854-4291
emukherjee@law.columbia.edu

*Counsel for Amici Curiae*
(all counsel are in their individual capacities)

*Not admitted in this Court

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| STANFORD DAILY PUBLISHING CORPS, *et al.,*<br><br>              Plaintiffs,<br><br>    vs.<br><br>RUBIO, *et al.*,<br>              Defendants. | Case No.: 5:25-cv-06618-NW<br><br>**BRIEF OF *AMICI CURIAE* IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS IN SUPPORT OF PLAINTIFFS**<br><br>Date: November 19, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 3, 5th Floor<br><br>The Honorable Noël Wise |

**TABLE OF CONTENTS**

INTRODUCTION AND STATEMENT OF AMICI ......................................................1

ARGUMENT .............................................................................................................1

I. THE GOVERNMENT'S RELIANCE ON 8 U.S.C. § 1227(A)(4)(C) TO DETAIN AND DEPORT A NONCITIZEN SOLELY FOR POLITICAL SPEECH IS EXCEPTIONAL. ...............................................................................................2

    A. Section 1227(a)(4)(C) Is Unique Among Deportability Grounds Because It Purportedly Authorizes Deportation Based on the Unfettered Discretion of a Single Political Official...........................................................................................4

    B. Section 1227(a)(4)(C) Has Almost Never Been Invoked by DHS ...........................5

II. SECTION 1227(A)4)(C) IS UNCONSTITUTIONAL ..........................................8

    A. Section 1227(a)(4)(C) Violates Due Process ............................................................8

       1. Section 1227(a)(4)(C) Is Void for Vagueness ....................................................8

       2. Section 1227(a)(4)(C) Deprives Noncitizens of a Meaningful Opportunity to Be Heard and Effectively Permits Prejudgment of a Noncitizens' Case ......................11

    B. Section 1227(a)(4)(C) Violates the First Amendment When It Is Used to Target Noncitizens Based on Protected Speech ...............................................................14

CONCLUSION........................................................................................................16

ADDENDUM: LIST OF AMICI CURIAE ..............................................................18

APPENDIX I: DECLARATION OF GRAEME BLAIR, PH.D., AND DAVID HAUSMAN, J.D., PH.D.

BRIEF OF AMICI CURIAE IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS

**TABLE OF AUTHORITIES**

<u>**Federal Cases**</u>

*Alarcon-Serrano v. I.N.S.*, 220 F.3d 1116 (9th Cir. 2000)...............................................14

*Bridges v. California*, 314 U.S. 252 (1941) .................................................................14

*Bridges v. Wixon*, 326 U.S. 135 (1945) .....................................................................14

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ...........................................................9

*Connally v. Gen. Constr. Co.*, 269 U.S. 385 (1926) ......................................................8

*Dennis v. United States*, 341 U.S. 494 (1951) ............................................................15

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)......................................................10

*Harisiades v. Shaughnessy*, 342 U.S. 580 (1951) .......................................................15

*Holder v. Humanitarian L. Project,* 561 U.S. 1 (2010) ................................................10

*Jordan v. De George*, 341 U.S. 223 (1951) ................................................................8

*Kaur v. Holder*, 561 F.3d 957 (9th Cir. 2009) ...........................................................13

*Kleindienst v. Mandel*, 408 U.S. 753 (1972)..............................................................15

*Kolender v. Lawson*, 461 U.S. 352 (1983)...................................................................9

*Massieu v. Reno*, 915 F. Supp. 681 (D.N.J. 1996), *rev'd on other grounds*, 91 F.3d 416 (3d Cir. 1996)...................................................................................... passim

*Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996) ...........................................................2, 5

*Matsumoto v. Labrador*, 122 F.4th 787 (9th Cir. 2024) ...............................................11

*Oshodi v. Holder,* 729 F.3d 883 (9th Cir. 2013)..........................................................12

*Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) .........................15

*Reno v. Flores*, 507 U.S. 292, 305 (1993) ..................................................................8

*Sessions v. Dimaya*, 584 U.S. 148 (2018)........................................................8, 10, 11

*Smith v. Goguen,* 415 U.S. 566 (1974) .......................................................................9

*United States v. Williams*, 553 U.S. 285 (2008) ........................................................8, 9

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489 (1982)................................10

*Wang v. Holder,* 583 F.3d 86, 90 (2d Cir. 2009) ................................................................14

*Zerezghi v. United State Citizenship & Immigr. Servs.*, 955 F.3d 802 (9th Cir. 2020) ................13

**<u>Administrative Decisions</u>**

*Matter of Khalifah*, 21 I&N Dec. 107 (BIA 1995) ................................................................7

*Matter of Ruiz-Massieu*, 22 I&N Dec. 833 (BIA 1999) ................................................ passim

*In re U-H-*, 23 I&N Dec. 355 (BIA 2003) ................................................................14

**<u>Statutes (Title 8 of U.S. Code)</u>**

8 U.S.C. § 1182(a)(3)(C)(iii), INA § 212(a)(3)(C)(iii)................................................2, 11

8 U.S.C. § 1227(a)(2), INA § 212(a)(2) ................................................................4

8 U.S.C. § 1227(a)(3), INA § 212(a)(3) ................................................................4

8 U.S.C. § 1227(a)(4), INA § 212(a)(4) ................................................................4

8 U.S.C. § 1227(a)(4)(A), INA § 237(a)(4)(A) ................................................................4

8 U.S.C. § 1227(a)(4)(B), INA §237 (a)(4)(B) ................................................................4

8 U.S.C. § 1227(a)(4)(C), INA §237 (a)(4)(C) ................................................................4

8 U.S.C. § 1227(a)(4)(C)(i), INA § 237(a)(4)(C)(i) ................................................ passim

8 U.S.C. § 1227(a)(4)(C)(ii), INA § 237(a)(4)(C)(ii) ................................................ passim

8 U.S.C. § 1227(a)(4)(D), INA § 237(a)(4)(D) ................................................................4

8 U.S.C. § 1227(a)(4)(E), INA § 237(a)(4)(E) ................................................................4

8 U.S.C. § 1227(a)(4)(F), INA § 237(a)(4)(F)................................................................4

8 U.S.C. § 1227(a)(6), INA § 237(a)(6) ................................................................4

8 U.S.C. § 1229a(b)(4), INA § 240(b)(4) ................................................................12

8 U.S.C. § 1229a(c)(3)(A), INA § 240(c)(3)(A)................................................................12

Former 8 U.S.C. 1251(a)(4)(C), INA § 241(a)(4)(C)................................................5, 6, 7

Former 8 U.S.C. 1251(a)(4)(C)(i), INA § 241(a)(4)(C)(i) ................................................6

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................... passim

U.S. Const. amend. V .............................................................................................. passim

**Articles and Other Authorities**

Ahilan Arulanantham & Adam Cox, *Explainer on First Amendment and Due Process Issues in Deportation of Pro-Palestinian Student Activist(s)*, Just Sec. (Mar. 12, 2025), https://www.justsecurity.org/109012/legal-issues-deportation-palestinian-student-activists/ ......15

Jonah E. Bromwich and Hamed Aleaziz, *Columbia Student Hunted by ICE Sues to Prevent Deportation*, N.Y. Times, Mar. 4, 2025.........................................................................................6

Adam Cox, *The Invention of Immigration Exceptionalism*, 134 YALE L.J. 329 (2024)...............15

Jennifer Lee Koh, *Crimmigration and the Void for Vagueness Doctrine*, 2016 WIS. L. REV. 1127 (2016) .......................................................................................9, 10

Marco Rubio (@marcorubio), X (Mar. 9, 2025, 3:10 PM), https://x.com/marcorubio/status/1898858967532441945............................................................16

Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 10, 2025, 1:05 PM), https://truthsocial.com/@realDonaldTrump/posts/114139222625284782.....................................3

Henry Weinstein, *Final Two L.A. 8 Defendants Cleared*, LA Times (Nov. 1, 2007) ....................3

BRIEF OF AMICI CURIAE IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS

**INTRODUCTION AND STATEMENT OF AMICI**[1]

*Amici curiae* are more than one hundred leading lawyers, law professors, and scholars who practice, write about, research, and teach immigration law.[2] *Amici* collectively have many centuries of experience representing individuals at all stages of their immigration proceedings and in federal court. Regardless of their differing views on recent campus protests and the war in the Middle East, *amici* are united (1) in finding that the government's reliance on 8 U.S.C. § 1227(a)(4)(C)(i) to target and detain noncitizens based on their protected speech is unlawful and unconstitutional; and (2) in concluding that 8 U.S.C. § 1227(a)(4)(C)(i) is unconstitutional.

*Amici* have a strong interest in the outcome of this case. Allowing the federal government to target noncitizens based on peaceful political speech will have devastating effects on immigrants, upend the practice of immigration law, and chill protected First Amendment speech not just on campuses but in communities nationwide.

**ARGUMENT**

The use of 8 U.S.C. § 1227(a)(4)(C)—referred to by the Plaintiffs as the Deportation Provision[3]—to target and deport a noncitizen solely on the basis of lawful political speech may well be unprecedented in the history of this provision. This provision of the Immigration and Nationality Act (INA) makes deportable any "[noncitizen] whose presence or activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States." 8 U.S.C. § 1227(a)(4)(C)(i),

---

[1] Plaintiffs and Defendants have consented to the filing of this brief. No party or its counsel had any role in authoring this brief. No person or entity—other than *amici* and their counsel—contributed money that was intended to fund preparing or submitting this brief.

[2] A list of *amici* is set forth in the Addendum. The positions taken in this brief are those of *amici* alone and should not be attributed to any institution with which *amici* are or have been affiliated.

[3] Complaint at ¶ 7, *Stanford Daily Publishing Corp., et al., v. Rubio, et al.*, No. 5:25-cv-06618, Dkt. 1 (Aug. 6, 2025).

INA § 237(a)(4)(C)(i). This deportability ground includes an exception, which prohibits

deportation because of a noncitizen's lawful "past, current, or expected beliefs, statements, or

associations, . . . *unless the Secretary of State personally determines that the [noncitizen's*

*presence] would compromise a compelling United States foreign policy interest*." 8 U.S.C. §

1182(a)(3)(C)(iii), INA § 212(a)(3)(C)(iii) (emphasis added) (incorporated by reference through

the exception in 8 U.S.C. § 1227(a)(4)(C)(ii), INA § 237(a)(4)(C)(ii)).

Among all the deportability grounds in the INA, Section 1227(a)(4)(C)(i) provides

one of the most sweeping grants of discretionary executive power. This ground has *almost*

*never* been invoked by the Department of Homeland Security (DHS), let alone for political

speech. The only federal district court to have considered the constitutionality of this ground

held that it violates due process because it is unconstitutionally vague and deprives

noncitizens of a meaningful opportunity to be heard. *See Massieu v. Reno*, 915 F. Supp. 681

(D.N.J. 1996), *rev'd on other grounds*, 91 F.3d 416 (3d Cir. 1996). More recently, in May

2025, another district court concluded that the Deportation Provision is likely

unconstitutionally vague as applied. *Khalil v. Trump*, 784 F. Supp. 3d 705, 767 (D.N.J.

2025).

I. **THE GOVERNMENT'S RELIANCE ON 8 U.S.C. § 1227(A)(4)(C) TO DETAIN AND DEPORT A NONCITIZEN SOLELY FOR POLITICAL SPEECH IS EXCEPTIONAL.**

It is not unusual for permanent residents or visa holders to be placed in removal

proceedings. Nor is it unprecedented for the government to single out Palestinians or those

who express pro-Palestinian views where they have allegedly violated some other provision

of the immigration laws.[4] However, the use of the Deportation Provision is extraordinarily rare, and we are unaware of it ever having been used as the sole charge in a case where the underlying conduct was itself political speech, prior to March 2025. Upholding the use of Section 1227(a)(4)(C) in this case would give the federal government power to deport lawfully present noncitizens, including permanent residents, at the whim of the Secretary of State (or at the whim of the President, through the Secretary of State). In March 2025, President Trump described the arrest of Mahmoud Khalil, a permanent resident, as "the first arrest of many to come."[5]

The implications of the Deportation Provision are by no means limited to noncitizens who engage in pro-Palestinian speech. The presence of Ukrainians who are critical of Russia, supporters of more security cooperation with Europe, and economists skeptical of tariffs on Mexico, Canada, and China, could all suddenly be considered adverse to U.S. foreign policy interests and subject to deportation based on the unilateral determination of the Secretary of State. This list has no end, and no meaningful limiting principles. In *Massieu*, the government's reliance on the Deportation Provision was based on "nothing more than the obstinacy of a foreign sovereign that is high on the list of nations that the United States must not offend or disappoint." 915 F. Supp. 681, 700 n.18 (D.N.J.), *rev'd on other grounds*, 91 F.3d 416 (3d Cir. 1996).

---

[4] Henry Weinstein, *Final Two L.A. 8 Defendants Cleared*, LA Times (Nov. 1, 2007).

[5] Donald J. Trump (@realDonaldTrump), Truth Social, (Mar. 10, 2025, 1:05 PM), at https://truthsocial.com/@realDonaldTrump/posts/114139222625284782.

**A. Section 1227(a)(4)(C) Is Unique Among Deportability Grounds Because It Purportedly Authorizes Deportation Based on the Unfettered Discretion of a Single Political Official.**

The deportability grounds in the Immigration and Nationality Act (INA) generally require a lawfully present noncitizen to engage in some *conduct* to be deported, such as committing a crime (1227(a)(2)), engaging in fraud (1227(a)(3)), or unlawfully voting (1227(a)(6)). Among the "[s]ecurity and related grounds" in 1227(a)(4), the Deportation Provision is the only one that can be invoked based solely on the subjective beliefs of an executive official, rather than any action by the noncitizen. Indeed, the other subsections of 1227(a)(4) require significant legal breaches, such as engaging in terrorism, seeking to overthrow the U.S. government through unlawful means, and participating in torture. *See* 8 U.S.C. §§ 1227(a)(4)(A), (B), (D), (E), (F).

By contrast, the Deportation Provision merely requires the presence of a noncitizen and the decision of the Secretary of State; it does not target any conduct whatsoever, let alone some specified kind of conduct. 8 U.S.C. § 1227(a)(4)(C)(i) (referring to "presence *or* activities") (emphasis added). Nor does the Deportation Provision require a showing of any *actual* adverse foreign policy consequences; it simply requires the Secretary to have "reasonable ground to believe"—a determination the immigration judge purportedly cannot question—that the noncitizen's presence or activities "*would have potentially* serious" adverse foreign policy consequences. *Id.* (emphasis added). By purportedly giving unfettered discretion to an executive official to decide that someone lawfully present in the United States is deportable, 1227(a)(4)(C) is a stark outlier among all the deportability grounds.

During the 35 years that the Deportation Provision has been in existence until March 2025, only one federal district court had an opportunity to address it, and that court determined it was unconstitutional in 1996. *Massieu*, 915 F. Supp. at 686. The district court in *Massieu* described this ground as a "breathtaking departure" from "deportation based on adjudications of defined impermissible conduct." *Id.* The Third Circuit reversed the decision based on its finding that the plaintiff had not exhausted administrative remedies but never reached the constitutional questions. *Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996). More recently, another district court ruled that the Deportation Provision is likely unconstitutionally vague as applied. *Khalil*, 784 F. Supp. 3d at 767.

## B.  Section 1227(a)(4)(C) Has Almost Never Been Invoked by DHS.

The Deportation Provision was introduced in 1990 and originally codified at 8 U.S.C. § 1251(a)(4)(C) (INA § 241(a)(4)(C)).[6] The use of this provision to seek an individual's deportation is almost unprecedented in this ground's 35-year history. In *Khalil v. Trump,* the government was ordered to provide a list of all instances in which the government has invoked Section 1227(a)(4)(C)(i) (INA § 237(a)(4)(C)(i)) or any predecessor statutes to seek the removal of individuals from the United States. No. 25-cv-1963 (MEF) (D.N.J.), Order, Dkt. No. 231. In response to the district court's order, the government identified a total of five cases originating before March 2025. *Id.*; Govt's Resp., Dkt. No. 241; Govt's Second Resp., Dkt. No. 246. The government's justifications for invoking these charges in the past were materially different from the situation here. For instance, the government claimed to have sought removal under Section

---

[6] In 1996, with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104–208, the provision was transferred to INA § 237(a)(4)(C).

1251(a)(4)(C) of leaders of foreign terrorist or paramilitary organizations, or individuals charged or convicted of crimes. Dkt. No. 241.[7] The one individual whom the government sought to remove under Section 1227(a)(4)(C) before March 2025 had "participated in and/or contributed to violent political activity in Somalia." *Id*.

The government stated that these may not be the only instances of the statute's invocation. However, the government's own data and published immigration decisions reveal strikingly few cases. Based on publicly available data from the Executive Office of Immigration Review (EOIR), out of 11.7 million cases, DHS has invoked Section 1251(a)(4)(C)(i) or Section 1227(a)(4)(C)(i) as a removal charge in *only fourteen cases* before March 2025,[8] when ICE arrested and charged Mahmoud Khalil under this ground,[9] and attempted to arrest Yunseo Chung for the same reason.[10] Decl. of Graeme Blair, Ph.D., and David Hausman, J.D., Ph.D. ("Blair and Hausman Decl."), Appendix ¶¶ 7, 10, 13. Out of the fourteen such cases in the EOIR data, only

---

[7] It is plausible that the use of the Deportation Provision for seeking deportation based on criminal activities and leadership in terrorist organizations has decreased because since the 1990s, the INA has expanded crime- and terrorism-related deportation grounds. *See* Juliet Stumpf, *The Crimmigration Crisis: Immigrants, Crime, and Sovereign Power*, 56 AM. U. L. REV. 367, 379–86 (2006).

[8] The fourteen cases in the EOIR CASE dataset did not include *Matter of Khalifa*, 21 I&N Dec. 107 (BIA 1995), a published BIA Decision, likely because the charge was added when the Notice to Appear was amended. Decl. of Graeme Blair, Ph.D., and David Hausman, J.D., Ph.D. ("Blair and Hausman Decl."), Appendix ¶10. If you add that case, the total number would be fifteen.

[9] Charlie Savage, *Congress Wrote a Deportation Law to be Used 'Sparingly.' Trump Has Other Ideas*, N.Y. Times, Apr. 1, 2025.

[10] Jonah E. Bromwich and Hamed Aleaziz, *Columbia Student Hunted by ICE Sues to Prevent Deportation*, N.Y. Times, Mar. 4, 2025.

four involved detention throughout the proceeding.[11] *Id.* ¶ 13. In just seven of these fourteen cases, the Deportation Provision was the sole charge alleged throughout the proceeding. *Id.* ¶ 13. Out of those seven cases, just *one* individual was detained throughout the proceeding. *Id.* Only three individuals ever were ultimately ordered removed or deported after being charged with removability under this ground. *Id.* That amounts to fewer than one person being ordered removed *per decade* under this provision.

What's more, nearly all of these cases arose in the distant past, shortly after the provision was enacted. Focusing on the 25 years before March 2025, the EOIR data reflect that Section 1227(a)(4)(C)(i) has been invoked only *four times*, and *only twice* has it been the sole charge alleged throughout the proceeding. *Id.* ¶ 12. We have not been able to determine whether either of the two charged individuals over the past 25 years were charged for only their speech. But neither of those two individuals was detained throughout their immigration proceedings. *Id.* ¶ 13. These numbers may even be a significant overcount due to the possibility of errors in the data and the extreme rarity in which these charges have been invoked. *Id.* ¶ 14-17. Regardless, invoking the statute based solely on political speech by a noncitizen makes the government's assertion of authority here extraordinary—indeed, vanishingly rare.

The BIA decision in Massieu's case confirms that the Deportation Provision "has been used very rarely." *Matter of Ruiz-Massieu*, 22 I&N Dec. 833, 838 (BIA 1999) (citing

---

[11] In the EOIR data, cases may not necessarily mean different individuals. Appendix (*Blair and Hausman Decl.*) ¶7. Therefore, it is possible that this charge has been invoked against even fewer than fourteen individuals.

BRIEF OF AMICI CURIAE IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS

*Matter of Khalifah*, 21 I&N Dec. 107 (BIA 1995), as "the only published Board case").[12] The government's decision to invoke this singular charge against noncitizens who engage in constitutionally protected speech and to detain them is alarming given this history. Although at least some uses of the foreign policy ground appear to have resulted in deportations, the majority have not, highlighting the problems with the overall discretion granted by the statute. This case—which challenges the administration's policy of viewpoint-based immigration enforcement, not the INA itself—clearly falls outside any reasonable application of the provision in light of the serious constitutional concerns explained below.

## II.   SECTION 1227(A)(4)(C) IS UNCONSTITUTIONAL

### A.  Section 1227(a)(4)(C) Violates Due Process

It is well-settled that noncitizens have a right to due process. *Reno v. Flores,* 507 U.S. 292, 305–07 (1993). Section 1227(a)(4)(C)(i) violates due process because it is void for vagueness and deprives noncitizens of a meaningful opportunity to be heard, effectively resulting in pre-judgment of their deportability.

#### 1.    Section 1227(a)(4)(C) Is Void for Vagueness

The Supreme Court has long held that a person cannot constitutionally be punished under a vague criminal statute, as this would undermine "ordinary rules of fair play" and violate "the first essential of due process." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). The void-for-vagueness doctrine has also long been applied to deportation statutes. *See Jordan v. De George*, 341 U.S. 223, 231 (1951) (recognizing that deportation is a

---

[12] *Amici* have exhaustively searched unpublished BIA cases involving Section 1251(a)(4)(C) or Section 1227(a)(4)(C) and have found none.

BRIEF OF AMICI CURIAE IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS

"drastic measure"). In 2018, the Supreme Court relied on the void-for-vagueness doctrine to strike down the residual clause of the "crime of violence" aggravated felony deportability ground. *Sessions v. Dimaya*, 584 U.S. 148, 174-75 (2018).

As the Supreme Court recognized in *Dimaya*, a law is unconstitutionally vague if it fails either one of two clearly articulated tests. *Id.* at 155 (plurality). The key questions are whether a statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations and internal quotation marks omitted). The purpose of the first inquiry regarding fair notice "is to enable the ordinary citizen to conform his or her conduct to the law." *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999). The second inquiry, which has been described as "the more important" of the two, *Kolender v. Lawson*, 461 U.S. 352, 358 (1983), requires a court to inquire whether the statutory language is "of such a standardless sweep" that it allows enforcers "to pursue their personal predilections." *Smith v. Goguen,* 415 U.S. 566, 575 (1974). A statute must establish sufficiently clear standards to minimize the risk of "arbitrary enforcement." *Kolender*, 461 U.S. at 357.

Section 1227(a)(4)(C) violates both parts of the test. First, as the district court held in *Massieu*, this deportability ground "provides absolutely no notice to [noncitizens] as to what is required of them under the statute." 915 F.Supp. at 699. Since "no one outside the Department of State and, perhaps, the President ever knows what our nation's frequently covert foreign policy is at any given time, . . . there is no conceivable way that [a noncitizen] could know, *ex-ante*, how to conform his or her activities to the requirements of the law."

BRIEF OF AMICI CURIAE IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS

*Id.* at 700. Furthermore, "it is even less likely that [a noncitizen] could know that his or her mere presence here would or could cause adverse foreign policy consequences when our foreign policy is unpublished, ever-changing, and often highly confidential." *Id.* As Professor Jennifer Lee Koh has argued, "[n]otice before the imposition of immigration penalties is particularly important because immigration adjudications do not operate on a level playing field between the parties." Jennifer Lee Koh, *Crimmigration and the Void for Vagueness Doctrine*, 2016 Wis. L. Rev. 1127, 1157 (2016) (internal quotation marks omitted).

Second, Section 1227(a)(4)(C) is "so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304. It fails to provide even "minimal guidelines to govern law enforcement," and allows the Secretary State, or the President, acting through the Secretary of State, "to pursue their personal predilections." *Smith*, 415 U.S. at 574–75. Because Section 1227(a)(4)(C) has no "explicit standards" and instead ostensibly gives the Secretary of State total discretion to determine that a noncitizen's presence has potentially serious adverse foreign policy consequences, it permits deportation "on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford,* 408 U.S. 104, 108–09 (1972).

Finally, as the Supreme Court has recognized, "where a vague statute abut(s) upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of (those) freedoms," leading people to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (internal quotation marks and footnotes omitted). Consequently, statutes that trigger First

Amendment concerns have historically received more scrutiny from courts when challenged as void for vagueness. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489, 499 (1982) ("If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply."); *Holder v. Humanitarian L. Project,* 561 U.S. 1, 19 (2010) ("We have said that when a statute interferes with the right of free speech or of association, a more stringent vagueness test should apply.") (internal quotation marks omitted); *Matsumoto v. Labrador*, 122 F.4th 787, 805 (9th Cir. 2024) ("Of significance here, a more stringent vagueness test should apply if a statute interferes with First Amendment rights") (internal quotation marks omitted); *see also* Koh, *supra* at 1138.

The Supreme Court made clear in *Dimaya*, however, that a statute need not touch on First Amendment concerns to be void for vagueness on its face: there, the Supreme Court determined that the residual clause of the crime of violence deportability ground was facially invalid despite the absence of First Amendment interests, because the provision "produces more unpredictability and arbitrariness than the Due Process Clause [of the Fifth Amendment] tolerates," 584 U.S. at 175. That holding serves to reinforce the conclusion that 1227(a)(4)(C), which clearly threatens First Amendment interests, can be facially invalid under the void-for- vagueness doctrine. Section 1227(a)(4)(C)(ii) expressly authorizes the Secretary of State to rely exclusively on a person's lawful "beliefs, statements, or associations" in determining that a person should be deportable under the provision, as long as the Secretary of State makes a personal determination that the foreign policy interests are "compelling." 8 U.S.C. § 1227(a)(4)(C)(ii) (incorporating by

reference 8 U.S.C. § 1182(a)(3)(C)(iii), INA § 212(a)(3)(C)(iii)).[13] This intrusion into First

Amendment interests provides additional support for finding Section 1227(a)(4)(C)

unconstitutionally vague.

> ### 2. Section 1227(a)(4)(C) Deprives Noncitizens of a Meaningful Opportunity to Be Heard and Effectively Permits Prejudgment of a Noncitizen's Case.

The "vital hallmark" of the "full and fair hearing" required by due process "is the

opportunity to present evidence and testimony on one's behalf." *Oshodi v. Holder,* 729 F.3d 883,

889 (9th Cir. 2013). In a typical deportation proceeding, DHS bears the burden of establishing

deportability by "clear and convincing evidence," and an immigration judge's decision must be

based on "reasonable, substantive, and probative evidence." 8 U.S.C. § 1229a(c)(3)(A). That

decision is normally made after a full administrative hearing, where the noncitizen has "a

reasonable opportunity to examine the evidence" submitted by DHS, to present evidence, and to

cross-examine the government's witnesses. 8 U.S.C. § 1229a(b)(4)(B). In the government's

view, under Section 1227(a)(4)(C), however, it is the Secretary of State who unilaterally

determines that a noncitizen is deportable. Even though a noncitizen charged under this ground

has a technical right to a hearing before an immigration judge, the BIA has determined that there

is no way for the noncitizen to actually question or challenge the Secretary of State's

determination: no evidence must be presented to support the Secretary of State's assertions, and

no opportunity is provided for the noncitizen to cross-examine the Secretary of State or any other

---

[13] The use of the word "compelling" in this exception distinguishes it from the language in Section 1227(a)(4)(C)(i) requiring only "potentially serious adverse foreign policy consequences."

BRIEF OF AMICI CURIAE IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS

government official about the alleged foreign policy concerns. *Matter of Ruiz-Massieu,* 22 I&N Dec. at 844-45.

In *Matter of Ruiz-Massieu*, the majority of the Board, sitting en banc, held that the Secretary of State's letter "should be treated as *conclusive evidence* of the respondent's deportability," finding that the immigration judge had "erred in holding that the [government] is obliged to present clear, unequivocal, and convincing evidence in support of the Secretary of State's belief." *Id.* at 842 (emphasis added). The Board reasoned that the government met its burden of proof "by the Secretary's *facially reasonable and bona fide determination* that the respondent's presence here would cause potentially serious adverse foreign policy consequences for the United States." *Id.* (emphasis added). The Board stressed that the statute granted the Secretary of State "exclusive authority" to determine the existence of a "reasonable ground" for believing in potentially serious adverse foreign policy consequences, *id.* at 842, and confirmed "the fundamentally ministerial aspect of the Immigration Judge's role" in such proceedings. *Id.* at 844. Any other approach, according to the Board, would require the immigration judge and the Board to "intrude into the realm of foreign policy." *Id.* at 844.

The extreme deference given to the Secretary of State's determination under the Board's decision in *Ruiz-Massieu* is similar to relying on "secret evidence," which courts have found "cabined by constitutional due process limitations." *Kaur v. Holder*, 561 F.3d 957, 960 (9th Cir. 2009) (BIA violated due process by using secret evidence against a petitioner); *see also Zerezghi v. United State Citizenship & Immigr. Servs.*, 955 F.3d 802, 813 (9th Cir. 2020) (vague reference to unspecific records deprived U.S. citizen and his noncitizen wife of

a meaningful opportunity to respond in violation of due process); *cf. Matter of Ruiz-Massieu*, 22 I&N. Dec. at 845 (reasoning that allowing the immigration judge to review the reasonableness of the Secretary's determination could require the government "to proffer secret or confidential information and expert witnesses, or involve a deposition of the Secretary of the State"). The Board's interpretation of Section 1227(a)(4)(C) both deprives the noncitizen of the right to a meaningful opportunity to be heard and results in pre-judgment of deportability based solely on the Secretary of State's assertions, in violation of the Fifth Amendment.[14]

### B. Section 1227(a)(4)(C) Violates the First Amendment When It Is Used to Target Noncitizens Based on Protected Speech

The public statements made by both the White House and the State Department confirm that noncitizens such as Mahmoud Khalil, Rumeysa Ozturk, Mohsen Mahdawi were targeted, detained, and placed in deportation proceedings because they engaged in constitutionally protected political speech. The Supreme Court long ago stated, without qualification, that "[f]reedom of speech and of press is accorded [noncitizens] residing in this country." *Bridges v. Wixon*, 326 U.S. 135, 148 (1945). *Bridges* concerned an Australian union organizer who lived much of his life in Southern California. Various U.S. government officials repeatedly targeted him for his pro-labor speech activities, but the Supreme Court

---

[14] By contrast, the Board has held that the "reasonable ground to believe" standard in both the terrorist activity inadmissibility ground and the bar to withholding of removal based on being a danger to the security of the United States are akin to probable cause determinations. *In re U-H-*, 23 I&N Dec. 355, 356 (BIA 2003); *see also Wang v. Holder*, 583 F.3d 86, 90 (2d Cir. 2009) (equating "serious reasons to believe" standard to probable cause; *Alarcon–Serrano v. I.N.S.,* 220 F.3d 1116, 1119 (9th Cir. 2000) ("reason to believe" standard for controlled substance traffickers ground must be based on "reasonable, substantial, and probative evidence").

protected him twice—first from jail and contempt of court in *Bridges v. California*, 314 U.S. 252 (1941), and later from deportation in *Bridges v. Wixon*.

In the decades since *Bridges v. Wixon* was decided, the Supreme Court, on several occasions, ruled against noncitizens who argued that immigration decisions violated their free speech rights. Critically, however, in none of these cases has the Court retreated from its holding that noncitizens living in the United States are protected by the First Amendment. When the Supreme Court upheld the deportation of former Communist Party members during the Red Scare, it did so by concluding that the deportations were permitted by the First Amendment, which at the time was less protective of the speech rights of citizens and noncitizens alike. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 592 & nn.18-19 (1951) (applying the framework in *Dennis v. United States*, 341 U.S. 494 (1951), a non-immigration case). And when the Court rejected the speech claims of citizens who argued that the exclusion of the Communist professor they had invited was pretextual, the Court did not decide the core free speech question, holding only that it would not look behind the facially valid reason given for the visa denial in order to sort out whether the professor had really been excluded because of his speech. *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972); *cf. United States v. Armstrong*, 517 U.S. 456 (1996) (refusing, in a non-immigration case alleging pretextual prosecution, to permit discovery in order to look behind the facially valid reason given for the charging decision). The Court's approach in these cases is consistent with the application of ordinary principles of free speech and constitutional law, not some special watered-down set of protections for noncitizens. *See* Adam Cox, *The Invention of Immigration Exceptionalism*, 134 YALE L.J. 329 (2024); Ahilan Arulanantham & Adam Cox, *Explainer on First Amendment and Due Process Issues in Deportation of Pro-Palestinian*

*Student Activist(s)*, Just Security (Mar. 12, 2025). Furthermore, in *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 488-92 (1999), where the Court refused to find selective prosecution of unlawfully present students, it still kept the door open for "outrageous" selective prosecution claims in such cases.

As noted above, Section 1227(a)(4)(C) contains, on its face, an exception openly authorizing deportation because of a person's speech—so long as the Secretary of State makes a "personal determination" that the ideological deportation is warranted (according to the "compelling United States foreign policy interest" standard). *See* 8 U.S.C. § 1227(a)(4)(C)(ii) (incorporating by reference 8 U.S.C. § 1182 (a)(3)(C)(iii)). This provision clearly conflicts with the Supreme Court precedents holding that the First Amendment protects the free speech rights of noncitizens residing in the United States. Section 1227(a)(4)(C) is therefore unconstitutional.

If this statutory provision is permitted to stand, even temporarily, it will continue to have a chilling effect on speech at universities and in communities across the country. *Amici* have personally observed this chilling effect on their campuses following campus arrests of noncitizens targeted for their speech. Students, scholars, professors, and others fear speaking freely because President Trump announced that many more arrests will come, and Secretary of State Marco Rubio confirmed "we're going to keep doing it,"[15] "revoking the visas and/or green cards . . . so they can be deported."[16]

## CONCLUSION

---

[15] Kaia Hubbard, *Secretary of State Marco Rubio Says "We're Going to Keep Going It" After Arrest of Columbia Activist*, CBS News Face the Nation (Mar. 16, 2025).
[16] Marco Rubio (@marcorubio), X (Mar. 9, 2025, 3:10 PM), https://x.com/marcorubio/status/1898858967532441945.

BRIEF OF AMICI CURIAE IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS

For the foregoing reasons, this Court should declare that 8 U.S.C. § 1227(a)(4)(C)(i) runs afoul of the First Amendment when it is used to target, detain, and deport noncitizens who are engaged in protected speech.

DATED: October 15, 2025

Respectfully submitted,

*/s/ Blaine Bookey*

Blaine Bookey (SBN 267596)
Center for Gender and Refugee Studies
200 McAllister Street
San Francisco, CA 94102
Telephone: 415.703.8202
Facsimile: 415. 581.8824
bookeybl@uclawsf.edu
(in her individual capacity)

Ahilan Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Tel: (310) 825-1029
arulanantham@law.ucla.edu
(in his individual capacity)

Fatma Marouf (SBN 222732)*
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

Elora Mukherjee*
Jerome L. Greene Clinical Professor of Law
Columbia Law School
Morningside Heights Legal Services, Inc.
435 W. 116th Street, Room 831
New York, NY 10027
Tel: (212) 854-4291
emukherjee@law.columbia.edu
(in her individual capacity)

Amber Qureshi*
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd., PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com
(in her individual capacity)

*Counsel for Amici Curiae*

*Not admitted to this Court

BRIEF OF AMICI CURIAE IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS

**ADDENDUM**
**LIST OF AMICI***

*All amici have signed on in an individual capacity, with institutional affiliation for identification purposes only.*

David Abraham
Professor (Emeritus)
University of Miami School of Law

Evangeline Abriel
Clinical Professor of Law
Santa Clara Univ. School of Law

Susan Akram
Clinical Professor of Law
Director, International Human Rights
  Clinic
Boston University School of Law

Raquel Aldana
Professor of Law
U.C. Davis School of Law

Nadia Anguiano
Associate Clinical Professor of Law
University of Minnesota Law School

Sabrineh Ardalan
Clinical Professor of Law
Harvard Law School

Paulina Arnold
Assistant Professor
University of Michigan Law School

Lauren Aronson
Clinical Professor
Director, Immigration Law Clinic
University of Illinois College of Law

Ahilan Arulanantham
Professor from Practice
Co-Director, Center for Immigration
  Law and Policy
UCLA School of Law

Sameer Ashar
Clinical Professor of Law
U.C. Irvine School of Law

Sabrina Balgamwalla
Assistant Professor of Law
Wayne State Law School

Jon Bauer
Clinical Professor of Law
Richard D. Tulisano '69 Scholar
  In Human Rights
University of Connecticut
School of Law

Jacqueline Bhabha
Professor of the Practice of Health and
Human Rights
Harvard University

Kaci Bishop
Clinical Professor of Law
University of North Carolina
School of Law

Diana Blank
William R. Davis Clinical Teaching
  Fellow
University of Connecticut
School of Law

Matthew Boaz
Assistant Professor of Law
Univ. of Kentucky
J. David Rosenberg College of Law

Richard A. Boswell
Professor of Law
U.C. Law, San Francisco

Ann Bright
Visiting Assistant Professor of Law
St. Mary's University School of Law

Emily Brown
Assistant Clinical Professor of Law
The Ohio State University
Moritz College of Law

J. Anna Cabot
Assistant Dean of Clinical Programs
University of Houston Law Center

Kristina M. Campbell
Professor of Law
Rita G. & Norman L. Roberts Faculty
  Scholar
Director, Beatriz and Ed Schweitzer
  Border Justice Initiative
Gonzaga University School of Law

Stacy Caplow
Professor of Law
Brooklyn Law School

Jocelyn Cazares Willingham
Assistant Professor of Law
University of the District of Columbia
David A. Clarke School of Law

Jennifer Chacón
Bruce Tyson Mitchell Professor
  of Law
Stanford Law School

Gabriel Chin
Edward L. Barrett Jr. Chair
Martin Luther King Jr. Professor
  of Law
U.C. Davis School of Law

Marissa Cianciarulo
Dean and Professor of Law
Western State College of Law

Dree Collopy
Adjunct Professor
American University
Washington College of Law

Rose Cuison-Villazor
Professor of Law
Chancellor's Social Justice Scholar
Rutgers Law School

Lauren DesRosiers
Visiting Assistant Professor
Director, Immigration Law Clinic
Albany Law School

Dorien Ediger-Seto
Research Scholar
NYU School of Law

Richard Frankel
Professor of Law
Drexel University
Thomas R. Kline School of Law

Niels Frenzen
Sidney M. and Audrey M. Irmas
  Endowed
  Clinical Professor of Law
USC Gould School of Law

Maryellen Fullerton
Suzanne J. and Norman Miles Professor
  of Law
Brooklyn Law School

Denise Gilman
Co-Director, Immigration Clinic
University of Texas School of Law

Valeria Gomez
Assistant Professor of Law
University of Baltimore
School of Law

Jennifer Gordon
Professor of Law
Fordham University School of Law

| | |
|---|---|
| 1 | Lucas Guttentag<br>Professor of the Practice of Law |
| 2 | Stanford Law School |
| 3 | Martin R. Flug Lecturer in Law and<br>Senior Research Scholar in Law |
| 4 | Yale Law School |
| 5 | Lindsay M. Harris<br>Professor of Law |
| 6 | University of San Francisco |
| 7 | School of Law |
| 8 | Dina Francesca Haynes |
| 9 | Executive Director, Schell Center for<br>International Human Rights<br>Research Scholar in Law |
| 10 | Yale Law School |
| 11 | |
| 12 | Emily Heger<br>Clinical Associate Professor |
| 13 | Director, Immigrant Rights Clinic<br>Texas A&M School of Law |
| 14 | |
| 15 | Mackenzie Heinrichs<br>Associate Professor of Law |
| 16 | University of Utah<br>S.J. Quinney College of Law |
| 17 | Laura A. Hernández |
| 18 | Professor of Law<br>Baylor Law School |
| 19 | Laila Hlass |
| 20 | Associate Professor of Law<br>Tulane Law School |
| 21 | |
| 22 | Mary Holper<br>Clinical Professor of Law |
| 23 | Boston College Law School |
| 24 | Lauren Hughes<br>Assistant Clinical Professor of Law Director, |
| 25 | Immigrant Rights Clinic<br>Washington & Lee University |
| 26 | School of Law |
| 27 | |
| 28 | |

Alan Hyde
Distinguished Professor Emeritus
Rutgers Law School

Kevin Johnson
Mabie/Apallas Professor of Public Interest
  Law and Chicanx Studies
University of California, Davis

Kathleen Kim
Professor of Law
LMU Loyola Law School

Daniel Kowalski
Editor-in-Chief
Bender's Immigration Bulletin (LexisNexis)

Elizabeth Jordan
Visiting Assistant Professor
Director, Immigration Law and Policy
  Clinic
University of Denver Sturm
College of Law

Michael Kagan
Joyce Mack Professor of Law
University of Nevada, Las Vegas
William S. Boyd School of Law

Daniel Kanstroom
Professor of Law
Boston College Law School

Elizabeth Keyes
Professor of Law
University of Baltimore
School of Law

Daniel M. Kowalski
Editor-in-Chief
Bender's Immigration Bulletin
  (LexisNexis)

Hiroko Kusuda
Clinical Professor
Loyola University New Orleans
College of Law

Jennifer Lee
Associate Professor of Law
Temple University
Beasley School of Law

Beth Lyon
Clinical Professor of Law
Cornell Law School

Alysia Maldan
Adjunct Professor of Law
New England Law | Boston
Northeastern Univ. School of Law

Lynn Marcus
Clinical Law Professor
University of Arizona
James E. Rogers College of Law

Peter Margulies
Professor of Law
Roger Williams University
School of Law

Fatma Marouf
Professor of Law
Texas A&M School of Law

Estelle McKee
Clinical Professor
Cornell Law School

Michelle McKinley
Bernard B. Kliks Professor of Law
University of Oregon School of Law

Isabel Medina
Victor H. Schiro Distinguished Professor
  of Law
Loyola University New Orleans
College of Law

Katie Meyer
Professor of Practice
Washington University in St. Louis
School of Law

Jennifer Moore
Professor of Law
University of New Mexico
School of Law

Daniel Morales
Dwight Olds Chair in Law
University of Houston

Angela Morrison
Professor of Law
Texas A&M School of Law

Elora Mukherjee
Jerome L. Greene Clinical Professor
  of Law
Columbia Law School

Karen Musalo
Professor of Law
UC Law San Francisco

Mauricio Noroña
Assistant Clinical Professor of Law
Touro University
Jacob D. Fuchsberg Law Center

John Palmer
Associate Professor
Dept. of Political and Social Sciences
Universitat Pompeu Fabra

Sarah Paoletti
Practice Professor of Law
University of Pennsylvania
Carey Law School

Helen Parsonage
Attorney at Law
North Carolina

Talia Peleg
Associate Professor of Law
Boston College Law School

Huyen Pham
University Distinguished Professor
Texas A&M School of Law

Nina Rabin
Clinical Professor of Law
UCLA School of Law

Jaya Ramji-Nogales
Professor of Law
Temple University
Beasley School of Law

Sarah Rogerson
Professor of Law
Albany Law School

Carrie Rosenbaum
Senior Fellow
Santa Clara University School of Law

Rachel Rosenbloom
Professor of Law
Northeastern University
School of Law

Faiza Sayed
Associate Professor of Law
Director, Safe Harbor Clinic
Brooklyn Law School

Anne Schaufele
Assistant Professor of Law
Co-Director, Immigration and Human Rights
  Clinic
University of the District of Columbia
David A. Clarke School of Law

Erica Schommer
Clinical Professor of Law
St. Mary's University School of Law

Philip Schrag
Delaney Family Professor of
Public Interest Law
Georgetown University

Ragini Shah
Clinical Professor of Law
Suffolk University Law School

Rebecca Sharpless
Professor of Law
University of Miami School of Law

Sarah Sherman-Stokes
Clinical Associate Professor of Law
Boston University School of Law

Doug Smith
Lecturer
Brandeis University

Jayashri Srikantiah
Professor of Law
Director, Immigrants' Rights Clinic
Stanford Law School

Elissa Steglich
Clinical Professor of Law
University of Texas School of Law

Brett Stokes
Director, Center for Justice
 Reform Clinic
Vermont Law and Graduate School

Juliet Stumpf
Edmund O. Belsheim Professor of Law
Lewis & Clark Law School

Maureen Sweeney
Law School Professor
University of Maryland Carey
School of Law

David B. Thronson
Professor of Law
Michigan State University
College of Law

Veronica Thronson
Clinical Professor of Law
Michigan State University
College of Law

1   Enid Trucios-Haynes
Professor of Law
2   Brandeis School of Law
University of Louisville
3

4   Tania N. Valdez
Associate Professor of Law
5   George Washington University
Law School
6

7   Sheila Velez Martinez
Jack and Lovell Olender Professor
8     of Asylum Refugee and
     Immigration Law
9   Univ. of Pittsburgh School of Law

10  Paulina Vera
Director, Immigration Clinic
11  George Washington Law School

12
Leti Volpp
13  Robert D. and Leslie Kay Raven Professor
     of Law
14  U.C. Berkeley

15
Jonathan Weinberg
16  Distinguished Professor of Law
Wayne State University
17

18  Deborah M. Weissman
Reef C. Ivey II Distinguished Professor
19     of Law
University of North Carolina
20  School of Law

21  Anna Welch
Professor of Law
22  University of Maine School of Law

23
John Wilshire
24  Senior Clinical Instructor
Assistant Director
25  Harvard Immigration & Clinic
Harvard Law School
26

27

28

Amelia Wilson
Assistant Clinical Professor
Director, Immigration Justice Clinic
Elisabeth Hau School of Law
Pace University

Sara Zampierin
Clinical Associate Professor of Law
Texas A&M School of Law