CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-6748
    kelsey.helland@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STANFORD DAILY PUBLISHING CORP., *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>RUBIO, *et al.*,<br><br>    Defendants. | Case No. 5:25-cv-06618-NW<br><br>**SUPPLEMENTAL DECLARATION OF KELSEY J. HELLAND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

I, Kelsey J. Helland, declare as follows:

1. I am an Assistant United States Attorney in the Northern District of California and counsel of record for Defendants in the above-captioned matter. If called to testify, I would and could competently testify as to the facts in this declaration.

2. Attached hereto as Exhibit 6 is a true and correct copy of the first two pages of the IRS Form 990 filed by the Stanford Daily Publishing Corporation for the tax year ending June 30, 2024, which I downloaded from the website https://projects.propublica.org/nonprofits/organizations/942190221/202251289349303006/full.

3. Attached hereto as Exhibit 7 is a true and correct copy of the Amended and Restated Bylaws of the Stanford Daily Publishing Corporation, dated May 8, 2020, which I downloaded from the website https://stanforddaily.com/about.

I declare under penalty of perjury under the laws of the United States that the above is true and accurate. Executed this 3rd day of November, 2025, in San Francisco, California.

                                            */s/ Kelsey J. Helland*
                                            KELSEY J. HELLAND

# EXHIBIT 6

efile Public Visual Render | ObjectId: 202511289349303006 - Submission: 2025-05-08 | TIN: 94-2190221

# Form 990: Return of Organization Exempt From Income Tax

OMB No. 1545-0047

**2023**

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

Do not enter social security numbers on this form as it may be made public.

Go to www.irs.gov/Form990 for instructions and the latest information.

Department of the Treasury
Internal Revenue Service

Open to Public Inspection

**A** For the 2023 calendar year, or tax year beginning 07-01-2023, and ending 06-30-2024

**B** Check if applicable:
- ☐ Address change
- ☐ Name change
- ☐ Initial return
- ☐ Final return/terminated
- ☐ Amended return
- ☐ Application pending

**C** Name of organization: THE STANFORD DAILY PUBLISHING CORP

Doing business as:

Number and street (or P.O. box if mail is not delivered to street address): 456 PANAMA MALL

City or town, state or province, country, and ZIP or foreign postal code: STANFORD, CA 943054006

**D** Employer identification number: 94-2190221

**E** Telephone number: (650) 721-5801

**F** Name and address of principal officer:
EMMA TALLEY
456 PANAMA MALL
STANFORD, CA 94305

**G** Gross receipts $ 726,471

**H(a)** Is this a group return for subordinates? ☐ Yes ☒ No
**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.

**I** Tax-exempt status: ☒ 501(c)(3)  ☐ 501(c) ( ) (insert no.)  ☐ 4947(a)(1) or  ☐ 527

**J** Website: WWW.STANFORDDAILY.COM

**H(c)** Group exemption number:

**K** Form of organization: ☒ Corporation  ☐ Trust  ☐ Association  ☐ Other

**L** Year of formation: 1892  **M** State of legal domicile: CA

## Part I   Summary

**1** Briefly describe the organization's mission or most significant activities:
THE MISSION OF THE ORGANIZATION IS TO ACT AS A MAJOR SOURCE OF NEWS RELATING TO OR OF INTEREST TO THE STANFORD UNIVERSITY COMMUNITY AND TO PROVIDE AN EDUCATIONAL OPPORTUNITY TO STANFORD UNIVERSITY STUDENTS IN JOURNALISTIC WRITING, PHOTOGRAPHY AND BUSINESS.

**2** Check this box ☐

| | | |
|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 9 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 |
| 5 | Total number of individuals employed in calendar year 2023 (Part V, line 2a) | 82 |
| 6 | Total number of volunteers (estimate if necessary) | 200 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 8,571 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7,571 |

| | | Prior Year | Current Year |
|---|---|---|---|
| 8 | Contributions and grants (Part VIII, line 1h) | 16,442 | 24,696 |
| 9 | Program service revenue (Part VIII, line 2g) | 370,738 | 398,297 |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 0 | 0 |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 321,539 | 303,478 |
| 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 708,719 | 726,471 |
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3) | 0 | 0 |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 353,422 | 428,576 |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| b | Total fundraising expenses (Part IX, column (D), line 25) 0 | | |
| 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 285,449 | 230,663 |
| 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 638,871 | 659,239 |
| 19 | Revenue less expenses. Subtract line 18 from line 12 | 69,848 | 67,232 |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| 20 | Total assets (Part X, line 16) | 1,958,211 | 1,953,106 |
| 21 | Total liabilities (Part X, line 26) | 288,798 | 236,664 |
| 22 | Net assets or fund balances. Subtract line 21 from line 20 | 1,669,413 | 1,716,442 |

## Part II   Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my

knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| **Sign Here** | Signature of officer<br>EMMA TALLEY  COO<br>Type or print name and title | | | | | Date<br>2025-05-06 | |
|---|---|---|---|---|---|---|---|
| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | | Date | Check ☐ if self-employed | PTIN<br>P00743411 | |
| | Firm's name    KARLSSON & LANE AN ACCOUNTANCY CORP | | | | Firm's EIN   94-2590397 | | |
| | Firm's address  4725 FIRST ST STE 226<br>                PLEASANTON, CA  94566 | | | | Phone no. (925) 271-5519 | | |

May the IRS discuss this return with the preparer shown above? See Instructions.  . . . . . . . . . . .     ☑ **Yes**  ☐ **No**

**For Paperwork Reduction Act Notice, see the separate instructions.**                Cat. No. 11282Y                 Form **990** (2023)

--- Page 2 ---

Form 990 (2023)                                                                                                                         Page **2**

**Part III   Statement of Program Service Accomplishments**

Check if Schedule O contains a response or note to any line in this Part III  . . . . . . . . . . . . . . . . ☐

**1**  Briefly describe the organization's mission:

THE MISSION OF THE ORGANIZATION IS TO ACT AS A MAJOR SOURCE OF NEWS RELATING TO OR OF INTEREST TO THE STANFORD UNIVERSITY COMMUNITY AND TO PROVIDE AN EDUCATIONAL OPPORTUNITY TO STANFORD UNIVERSITY STUDENTS IN JOURNALISTIC WRITING, PHOTOGRAPHY AND BUSINESS.

**2**  Did the organization undertake any significant program services during the year which were not listed on
    the prior Form 990 or 990-EZ?  . . . . . . . . . . . . . . . . . . . . . . .     ☐ **Yes**  ☑ **No**
    If "Yes," describe these new services on Schedule O.

**3**  Did the organization cease conducting, or make significant changes in how it conducts, any program
    services?  . . . . . . . . . . . . . . . . . . . . . . . . . . .     ☐ **Yes**  ☑ **No**
    If "Yes," describe these changes on Schedule O.

**4**  Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a**  (Code:            ) (Expenses $    424,405   including grants of $              ) (Revenue $    398,297 )

THE ORGANIZATION PUBLISHES "THE STANFORD DAILY", A NEWSPAPER FOR THE STANFORD UNIVERSITY COMMUNITY. THE PURPOSE OF THE NEWSPAPER IS TO PROVIDE THE STANFORD UNIVERSITY COMMUNITY WITH A QUALITY NEWSPAPER AND TO PROVIDE STANFORD UNIVERSITY STUDENTS WITH PRACTICAL EXPERIENCE IN JOURNALISM, TECH, AND BUSINESS MANAGEMENT. THE STANFORD DAILY STAFF IS COMPRISED OF MORE THAN 200 STUDENT WRITERS, EDITORS, GRAPHIC ARTISTS, ENGINEERS, PHOTOGRAPHERS AND ADVERTISING STAFFERS. THE ORGANIZATION IS LED BY A BOARD OF DIRECTORS WITH A STUDENT AND RECENT GRADUATE MAJORITY. DAY TO DAY OPERATIONS ARE MANAGED BY THE PRESIDENT/EDITOR IN CHIEF, CHIEF OPERATING OFFICER, AND CHIEF TECHNOLOGY OFFICER, ALL OF WHOM ARE STUDENTS OR RECENT GRADUATES. THE NEWSPAPER IS DISTRIBUTED ON THE STANFORD CAMPUS AND IN THE SURROUNDING COMMUNITIES.

**4b**  (Code:            ) (Expenses $              including grants of $              ) (Revenue $              )

**4c**  (Code:            ) (Expenses $              including grants of $              ) (Revenue $              )

# EXHIBIT 7

**AMENDED AND RESTATED BYLAWS OF**
**THE STANFORD DAILY PUBLISHING CORPORATION**
A California Nonprofit Public Benefit Corporation
Revision dated May 8, 2020

**ARTICLE I**
**OFFICES**

Section 1.
*Location of Offices*. The principal office of The Stanford Daily Publishing Corporation (the "*Corporation*") shall be located on the campus of Leland Stanford Junior University ("*Stanford University*"), in the County of Santa Clara, State of California. The Corporation may have such other offices, either within or without the County of Santa Clara, State of California, as the Board of Directors of the Corporation (the "*Board*" or the "*Board of Directors*") may determine.

Section 2.
*Relocation of Principal Office*. The principal office of the Corporation may be relocated outside the Stanford University campus only upon an amendment to these Bylaws by a vote of the Members of the Corporation.

**ARTICLE II**
**MEMBERS**

Section 1.
*One Class of Membership*. The Corporation shall have a single class of membership. The rights and privileges of each Member shall be equal except as otherwise set forth in these Bylaws. All membership shall be non-assessable and non-transferable.

Section 2.
*Members*. The Members of the Corporation shall consist of the individuals constituting the Editorial Staff, as identified on the Editorial Staff List prepared in accordance with Section 2(a)(1) of this Article II, and the individuals constituting the Business Staff, as identified on the Business Staff List prepared in accordance with Section 2(b)(1) of this Article II.

(a) *Editorial Staff*. The Editorial Staff shall consist of those individuals specified on an Editorial Staff List prepared by the Editor-in-Chief and Managing Editors (the heads of the Corporation's editorial departments, as selected by the Editor-in-Chief in accordance with the criteria set forth in Section 2(a)(1) of this Article II and approved by the Board (the "Editorial Staff List"); said List shall be submitted to the Board for approval at a regularly or specially scheduled Board meeting prior to each meeting of the Members of the Corporation and posted in the office for others to review no less than one (1) week in advance of any such approval by the Board.

Any individual who has contributed to the work of the Corporation during the period described in Section 2(a)(1) may challenge an individual's exclusion or inclusion on the proposed Editorial Staff List at least two (2) business days before the list is presented to the Board for approval. Disputes shall be resolved by a vote of the Managing Editors and the Editor-in-Chief, subject to an appeal as set forth in Section 2(c) below.

(1) *Criteria*. The Editorial Staff List shall include any individual who:

(i) has been working for the Corporation for at least two calendar months in the current or most recent fall, winter or spring academic quarter; and
(ii) has, during that period, demonstrated continued interest and commitment through meeting attendance and/or contributions to the operations of the Corporation, which may include, but are not limited to: editing, writing, photography, graphic design, videography, or other comparable work, to be determined at the discretion of the Managing Editors and Editor-in-Chief.

1

(b) *Business Staff*. The Business Staff shall consist of those individuals specified on a Business Staff List prepared by the Editor-in-Chief in accordance with the criteria set forth in Section 2(b)(1) of this Article II and approved by the Board (the "*Business Staff List*"); said List shall be submitted to the Board at the Board's regularly scheduled meeting prior to each meeting of the Members of the Corporation and posted in the office for others to review no less than one (1) week in advance of any such approval by the Board.

   (1) *Criteria*. The Business Staff List shall include any individual who:

      (i) has been working at the Corporation at least two (2) months prior to the date of the approval of the Business Staff List by the Board; and
      (ii) does not already appear on the Editorial Staff List; and
      (iii) has worked for an average of five (5) or more hours of work per week since beginning work at the Corporation.

(c) *Appeal*. Any person may appeal to the Board in order to add or delete any name to or from the proposed Editorial Staff List or Business Staff List before an election is held. The Board may, by unanimous written consent, or a two-thirds (2/3) vote of the Directors present at a duly called and held meeting at which a quorum is present, add or delete any name to or from the Editorial Staff List or the Business Staff List.

Section 3.
*Independence of Staff*. Under no circumstances shall the Board specify the duties or salary of any Editorial Staff or Business Staff Member, except those of the Editor-in-Chief and the Chief Operating Officer.

Section 4.
*Liability of Members*. No Member of the Corporation shall be personally liable for any of the debts, liabilities, or obligations of the Corporation. The Corporation shall indemnify each of the directors and officers to the full extent of the law and provide for directors and officers insurance.

## ARTICLE III
## MEETINGS OF MEMBERS

Section 1.
*Regular Meetings*. There shall be no fewer than two (2) regular meetings of the Members of the Corporation each fiscal year in January and May on dates designated by the Board. Each meeting shall be held for the following purposes:

   *(a) January*

      (1) Electing the Editor-in-Chief to serve for the spring volume, February 1 to June 30; and
      (2) Conducting such other business as may properly be brought before the meeting.

   *(b) May*

      (1) Electing the Editor-in-Chief to serve for the fall volume, July 1 to January 31; and
      (2) Electing the Editorial Staffer At-Large Director (as defined in Section 1(d) of Article IV) and the Student At-Large Director (as defined in Section 1(e) of Article IV) to the Board to their respective yearly terms; and
      (3) Electing the Professional Directors (as defined in Section 1 of Article IV) to their respective three-year terms; and
      (4) Conducting such other business as may properly be brought before the meeting.

Section 2.
   *Special Meetings*. Special meetings of Members for any lawful purpose may be called at any time by the Board, or by the President, or by five percent (5%) or more of the Members.

Section 3.
   *Notice of Meetings*. Notice stating the place, day, and hour of any meeting shall be made by written notice in The Stanford Daily, displayed in a way reasonably calculated to gain attention of persons who read The Stanford Daily, not less than three (3) times, with at least one (1) such notice being displayed not less than five (5) days before the meeting, and by posted notice prominently displayed at the principal office of the Corporation not less than five (5) days before the meeting.

Section 4.
   *Quorum*. The participation of members holding not less than one-third (1/3) of the votes that may be cast in any meeting shall constitute a quorum for such meeting. In the absence of a quorum, any meeting of Members may be adjourned from time to time by a majority of the Members present, but no other business may be transacted.

Section 5.
 *Voting at Meetings*.
  (a) *Generally*. Except as set forth below, each Member shall have one (1) vote. Cumulative voting shall not be authorized, but ranked voting with instant runoff may be authorized. Members shall not be permitted to vote by proxy. However, a Member absent from any meeting may cast his or her vote by an absentee ballot consisting of a writing signed by him or her and delivered to the Corporation prior to or at the time of the vote. Voting in the election corresponding to each meeting may take place both at the meeting and during the twenty-four (24) hours before the beginning of the meeting, the purpose of the extended voting being to facilitate the widest participation of Members of the Corporation in the elections. Where voting or meeting in person is not generally feasible, some form of secure online voting and online meeting shall be available. The Election Commission described in Section 2(b)(6) of Article V may also provide for online voting and Meetings of the Members in other circumstances.

  (b) *Voting Rights in Elections*. All voting will be conducted by secret ballot; no Member other than each of the following shall have the right to one (1) vote on any election or other matter properly brought before the Members of the Corporation:

  (1) *Editorial Staff*. Each member of the Editorial Staff listed on the Editorial Staff List most recently approved by the Board; and

  (2) *Business Staff*. Each member of the Business Staff listed on the Business Staff List most recently approved by the Board.

Section 6.
   *Presiding Officer; Rules*. Meetings of the Members shall be presided over by the President of the Corporation. Meetings shall be governed by Robert's Rules of Order, as such rules may be revised from time to time, insofar as such rules are not in conflict with these Bylaws, with the Articles of Incorporation, or with law.

**ARTICLE IV**
**DIRECTORS**

Section 1.
   *Number of Directors and Qualifications*. The Corporation shall have nine (9) Directors (the "*Directors*"), who shall collectively constitute the Board of Directors (the "*Board*" or the "*Board of Directors*"). Each Director must be at least 18 years of age at the time of his or her election. The Board shall consist of the following nine members:
   a. The then-serving Editor-in-Chief of the Corporation;
   b. The then-serving Chief Operating Officer of the Corporation;
   c. The then-serving Chief Technology Officer;

3

   d. An Editorial Staff member of the Corporation with academic standing of at least one (1) academic year (three (3) academic quarters) at the time of his or her election (the "*Editorial Staffer At-Large Director*");
   e. A student of Stanford University who is currently registered at the time of his or her election (the "*Student At-Large Director*");
   f. An individual having professional journalistic knowledge or experience (the "*Journalism Director*");
   g. An individual having professional business knowledge or experience (the "*Business Director*");
   h. An individual having professional legal knowledge or experience who is, if possible, a member of the California State Bar Association (the "*Legal Director*"); and
   i. A member of the Stanford University faculty or staff (the "*Faculty/Staff Director*").

Section 2.

*Change in the Number of Directors.* The number of Directors may be changed only by amendment of the Articles of Incorporation or by amendment or repeal of this Bylaw and adoption of a new Bylaw by the Members.

Section 3.

*Election of Directors.* The Editor-in-Chief, Chief Operating Officer, and Chief Technology Officer shall each automatically become a member of the Board upon assuming his or her respective office. Each of the remaining six (6) Directors shall be elected by a majority vote of the Members of the Corporation voting in a meeting of the Corporation, each Member having one (1) vote for each Director to be elected.

Section 4.

*Terms of Office.* The terms of office for Directors (a) - (c) shall be concurrent with the terms of the corresponding positions as Editor-in-Chief, Chief Operating Officer, and Chief Technology Officer. The terms of office for Directors (d) - (e) (the "*At-Large Directors*") shall be approximately one (1) year from the Corporation's May meeting to the Corporation's meeting the following May. The terms of office for Directors (f) - (i) shall be approximately three (3) years, commencing on the date of their election at the May Members' meeting. Directors (f) – (i) shall step down for at least one (1) term after serving two (2) complete consecutive terms, and new board members shall be elected to fill that position. Directors (f) – (i) can be re-appointed to a second consecutive term by an all company vote.

Section 5.

*Role of Directors.* The Directors shall exercise the powers of the Corporation, control its property, and conduct its affairs as they deem best, except as otherwise provided by law, by the Articles of Incorporation, or by these Bylaws.

Section 6.

*Vacancies.* Vacancies on the Board shall exist upon the death, resignation, or termination of membership of any Director. Vacancies shall be filled by a two-thirds (2/3) vote of those Directors then serving, through less than a quorum, or by the sole remaining Director. Each Director so elected shall serve until the next meeting of the Corporation, when an election shall be held to elect a Director to serve for the balance of the term of any Director so replaced.

Section 7.

*Board Chair.* The Directors shall elect a Chair from among the members of the Board, other than the Editor-in-Chief or the Chief Operating Officer, by majority vote of those present. The Chair shall serve for one (1) year and shall be eligible for reelection. The Chair shall retain his or her voting rights as a member of the Board. The Chair's only added function shall be to provide for an agenda for meetings of the Board (which duty the Chair may delegate) and preside over such meetings.

Section 8.

*Board Vice Chair.* The Directors shall elect a Vice Chair from among the members of the Board, by majority vote of those present, to serve in the Chair's absence. The Vice Chair shall serve for one (1) year and shall be eligible for reelection. The Vice Chair shall retain his or her voting rights as a member of the Board.

Section 9.

*Quorum.* A majority of the Directors then serving shall constitute a quorum for the transaction of business, except as a greater number is required by these Bylaws.

Section 10.

*Meetings.* The Board shall meet at regular intervals, at least once during each of the months of October, November, January, February, April, May, and June. Special Meetings shall be held whenever three (3) Board members so request. Written notice of all meetings shall be delivered by mail, e-mail, facsimile, or personally to all Board members at least three (3) days before any meeting. A special meeting shall be held within five (5) days after a request, with the same notice as above specified being required.

Section 11.

*Action by Unanimous Written Consent.* Any action required or permitted to be taken by the Board under any provision of law may be taken without a meeting if all members of the Board then serving shall individually or collectively consent in writing to such action. Such written consent shall be filed with the corporate records. Such action by written consent shall have the same force as a unanimous vote of such Directors.

Section 12.

*Rules.* Meetings of Directors shall be governed by Robert's Rules of Order, as such rules may be revised from time to time, insofar as such rules are not in conflict with these Bylaws, with the Articles of Incorporation, or with law.

Section 13.

*No Remuneration of Directors.* Directors shall receive no fees or remuneration for serving as Board members or attending meetings of the Board.

Section 14.

*Removal of Directors.* Each of the Directors may, by a two-thirds (2/3) vote of the Directors then serving, be removed from the Board if in the opinion of the Board, as expressed by their own action, they believe the Board member has repeatedly taken action inconsistent with the purposes of the Corporation as defined in the Articles of Incorporation.

Section 15.

*No Personal Liability of Directors.* None of the Directors, individually or jointly, shall be personally liable for any of the debts, liabilities, or obligations of the Corporation.

Section 16.

*Meeting Attendance.* Directors are expected to attend all regular Board meetings in person or electronically. If a Director misses more than one out of four consecutive Meetings, such action will be considered a voluntary resignation from the board. The Board by two-thirds (2/3) vote may make an exception to this clause due to special circumstances. In person attendance is preferred.

**ARTICLE V**
**OFFICERS**

Section 1.

*Officers of the Corporation.* The Corporation shall have three (3) Officers: (i) the Editor-in-Chief/President/Chief Executive Officer, (ii) the Chief Operating Officer/Business Manager/Treasurer ("COO"), and (iii) the Secretary. Officer positions (i) and (ii) may not be held concurrently by a single individual, although (i) and (iii) or (ii) and (iii) may be held concurrently by a single individual if agreed to by the Board.

Section 2.
*Editor-in-Chief.*

  *(a) Powers and Duties.*

    (1) *Content.* All the content of the Corporation's publications, including The Stanford Daily, other print publications of the Corporation, and any of its Web sites (collectively, the "*Publications*") shall be controlled solely by the Editor-in-Chief.

    (2) *Policies.* The Editor-in-Chief shall have the sole responsibility for defining policies relating to the following areas for the Corporation and its publications: guidelines for determining the acceptability of print and online advertisements; the publishing of corrections, retractions, and apologies; the disclosure of unpublished editorial material; and promises of confidentiality. Prior to assuming office, an incoming Editor-in-Chief shall present his or her policies to the Board of Directors before his or her volume begins, as outlined in Section 2(b)(4) of this Article V.

    (3) *Day-to-Day Operations.* The Editor-in-Chief shall be the final authority on all day-to-day operations of the Corporation.

    (4) *Responsibilities.* The Editor-in-Chief shall be responsible for:

      (i) The entire content of the Corporation's publications. Specifically, he or she shall be responsible for ensuring high-quality news, sports, features, entertainment, opinions, and other sections of The Stanford Daily and the various sections of any other Publication;

      (ii) Recruiting and training a high-quality Editorial Staff;

      (iii) Long-range planning of the entire operations of the Corporation;

      (iv) The relationship of the Corporation with the readership of each Publication; and

      (v) Carrying out the purposes of the Corporation as outlined in the Articles of Incorporation.

    (5) *Reports to the Board.* The Editor-in-Chief shall report to the Board at each meeting of the Board, outlining his or her major actions and plans and the general status of the Corporation.

    (6) *Summer Editor.* The Editor in Chief elected to serve the fall volume (July 1st through January 31st) shall appoint a Summer Editor to serve as editor of The Stanford Daily for the summer volume (July 1st through September 15th). Such Editor-in-Chief may appoint himself or herself as this Summer Editor. No individual shall be entitled to serve as the President of the Corporation solely by virtue of his or her appointment to serve as the Summer Editor.

  *(b) Election.*

    (1) *Staff Membership of Candidates.* Each candidate for the position of Editor-in-Chief must have maintained active standing on either the Editorial Staff List or the Business Staff List for two (2) volumes, although the volumes need not be consecutive.

    (2) *Registration of Candidates.* Each candidate for the position of Editor-in-Chief must be registered as a student at Stanford University within one (1) of the last two (2) quarters and be eligible to register in the quarter that the election is held. He or she need not remain registered throughout his or her term of office.

    (3) *Deadline for Nominations.* The Board of Directors shall set a deadline for nominations for Editor-in-Chief not less than three (3) weeks before the beginning of the next Editor-in-Chief's term. Each candidate must post a letter of intent briefly describing his or her interest in

    the position, qualifications, and relevant experiences, by a time and at a location specified by the Election Commission.

  (4) *Platform and Policies*. Each candidate for the position of Editor-in-Chief must post for the Members and provide to the Board his or her platform and proposed editorial policies, as outlined in Section 2(a)(2) of this Article V, at least one (1) week prior to the Editor-in-Chief election.

  (5) *Election Procedures*. The election shall be conducted by secret ballot and the Editor-in-Chief shall be elected by a majority of votes cast by the Members eligible to vote as described in Section 2 of Article II. A third (1/3) of those eligible to vote shall constitute a quorum, which shall be required to conduct such election, as described in Section 4 of Article III. If no candidate receives a majority of the votes out of those cast by Members eligible to vote, a run-off election shall be held the following day between the two (2) candidates receiving the highest total number of votes. An individual elected to serve as the Editor-in-Chief shall automatically become the President of the Corporation upon taking his or her office as the Editor-in-Chief.

  (6) *Election Commission*. The Election Commission, comprised of the then-serving Editor-in-Chief, the then-serving Chief Operating Officer, and the then-serving Chief Technology Officer, will, by a majority of its members, set the specific rules for each Editor-in-Chief election as well as for any other vote on a matter properly brought before the Members, including how the vote shall be conducted and all other campaign rules not otherwise specified in these Bylaws or by the Board. However, no individual may serve on the Commission while concurrently running as a candidate for an elected position. The Board, by a majority vote, will designate a substitute member as necessary if the Editor-in-Chief, Chief Operating Officer, or Chief Technology Officer is to be a candidate in an upcoming election. The Commission must submit its rules for the election to the Board at least two (2) weeks prior to the election.

  (7) *Replacement upon Resignation, Recall, or Removal*. If the Editor-in-Chief intends to resign, a letter of resignation should be provided as soon as possible to the Board Chair. Should the Editor-in-Chief resign or be recalled or removed, the Chief Operating Officer shall immediately appoint an interim Editor-in-Chief, after consulting with the Editorial Staff. The Board shall then promptly appoint a new Editor-in-Chief to serve the remainder of the former Editor-in- Chief's term.

*(c) Term of Office.*

  (1) The Editor-in-Chief shall serve for the part of the fiscal year that corresponds to one volume. The fall volume term shall be from July 1st to January 31st, and the spring volume term shall be from February 1st to June 30th.

  (2) A person may serve no more than two (2) terms as Editor-in-Chief.

*(d) Recall and Removal.*

  (1) *Recall by Editorial Staff*. The Editorial Staff, through a written petition signed by at least 20 percent (20%) of the individuals shown on the most recently approved Editorial Staff List, may call for an election recall of the Editor-in-Chief. At such an election recall, provided that quorum is met, a majority of the Members present of the Editorial Staff may vote to remove the Editor-in-Chief.

  (2) *Removal by the Board*. The Board of Directors may remove the Editor-in-Chief by a two-thirds (2/3) vote of the Directors then serving, the Editor-in-Chief not included, at a duly called and held meeting of the Board of Directors at which a quorum is present, if they determine that the Editor-in-Chief has taken action inconsistent with the purposes of the Corporation as set forth in the Articles of Incorporation or these Bylaws.

(3) The removal of an individual from the office of Editor-in-Chief, whether by the Editorial Staff or by the Board, shall automatically and immediately remove such individual from (1) the office of the President of the Corporation, and (2) the Board.

Section 3.
  *Chief Operating Officer.*

  *(a) Powers and Duties.*

   (1) *Financial Activities*. The Chief Operating Officer shall be responsible for all sales and other financial activities of the Corporation, subject only to the authority of the Board and the Editor-in-Chief as outlined in these Bylaws.

   (2) *Business Operations*. The Chief Operating Officer shall have full discretion to organize and run the business operations of the Corporation, subject only to such restrictions as are specifically outlined in these Bylaws or as the Board may provide from time to time.

   (3) *Business Staff*. The Chief Operating Officer shall have full discretion to employ and/or dismiss Business Staff members, subject to salary, commission, and other terms of employment as shall be annually recommended by the Chief Operating Officer and approved by the Board.

   (4) *Day-to-Day Operations*. The Chief Operating Officer is subject to the direction of the Editor-in- Chief on any matter involving the day-to-day publishing or other incidental activities of the Corporation, provided that the Chief Operating Officer shall have the right to appeal to the Board on matters of serious dispute.

   (5) *Certain Limits.* Nothing in this Section 3(a) gives the Chief Operating Officer the power to prevent or hinder the Editor in Chief in the following activities:

      (i) Publishing the issues of The Stanford Daily or any other Publication permitted by these Bylaws and approved by the Board; or

      (ii) Increasing or decreasing the number of pages or circulation size of any particular issue of The Stanford Daily or any other Publication of the Corporation.

  *(b) Selection.*

   (1) *Selection Committee.* An individual shall be selected COO-Elect, who shall automatically become the Corporation's Chief Operating Officer, as well as Treasurer, for the immediately following fiscal year. The COO-Elect shall be selected by a committee composed of the then-serving COO, the then-serving Chief Technology Officer, up to two (2) other Business Staff members to be chosen by the COO, up to two (2) Directors to be chosen by the Chair, and the then-serving Editor-in-Chief. No individual may be a member of the Selection Committee if he or she is a candidate for the position of COO-Elect.

   (2) *Timing.* In January, the Selection Committee shall announce a vacancy, and it shall hold interviews with potential candidates as early as the month of February. The selection shall be made no later than the last week of April. Following selection, the COO-Elect may serve as the Associate COO during a time period of the COO's choosing before the COO -Elect assumes the position of COO.

  (c) *Replacement upon Resignation or Dismissal.* If the Chief Operating Officer intends to resign, a letter of resignation should be provided as soon as possible to the Board Chair. Should the COO resign or be dismissed, the Editor-in-Chief shall appoint an interim COO, who shall also automatically assume the office of Treasurer, and the Board shall form a new Selection Committee to appoint a COO for the remainder of the term.

8

(d) *Dismissal.* The Board of Directors may remove the Chief Operating Officer by a two-thirds (2/3) vote of the Directors then serving, the COO not included, at a duly called and held meeting of the Board of Directors at which a quorum is present, for good cause, including but not limited to any breach by the Chief Operating Officer of a duty, fiduciary or otherwise, imposed by virtue of the office or position on the Board. The good cause for any such removal shall be placed in the written minutes of the meeting and be made known in writing to the Chief Operating Officer so removed.

(e) *Term of Office.* The Chief Operating Officer shall serve a 12-month term running from July $1_{st}$ to June $30_{th}$. A person may serve no more than two (2) terms as COO.

Section 4.
  *Secretary.*

  (a) *Powers and Duties.* The Board shall outline the Secretary's powers and duties.

  (b) *Selection.* The Board of Directors shall appoint a Secretary upon a two-thirds (2/3) vote of the members of the Board then serving, at a duly held meeting.

  (c) *Term of Office.* The Board of Directors shall determine the Secretary's term of office.

  (d) *Dismissal.* The Board of Directors may remove the Secretary by a vote of two-thirds (2/3) of the members then serving, at a duly held meeting.

## ARTICLE VI
## FISCAL YEAR

Section 1.
  *Fiscal Year.* The fiscal year of the Corporation shall begin on July 1st of each year and end on June 30th of each year.

## ARTICLE VII
## CONTRACTS, CHECKS, DEPOSITS, AND FUNDS

Section 1.
  *Contracts.* The Board may authorize any officer or officers, agent or agents of the Corporation, in addition to the officers so authorized by these Bylaws, to enter into any contract or execute and deliver any instrument in the name of the Corporation and on behalf of the Corporation, and such authority may be general or confined to specific instances.

Section 2.
  *Checks, Drafts, Etc.* All checks, drafts, or orders for the payment of money, notes, or other evidences of indebtedness issued in the name of the Corporation shall be signed by such officer or officers, agent or agents of the Corporation, and in such manner as shall from time to time be determined by resolution of the Board.

Section 3.
  *Deposits*. All funds of the Corporation shall be deposited from time to time to the credit of the Corporation in such banks, trust companies, or other depositaries as the Board may select.

Section 4.
  *Gifts*. The Board may accept on behalf of the Corporation any contribution, gift, bequest, or device for the general purposes or for any special purposes of the Corporation.

## ARTICLE VIII
## BOOKS AND RECORDS

Section 1.

*Books and Records.* The Corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its members, Board, and committees having any authority of the Board of Directors, and shall keep at the registered or principal office of the Corporation.

## ARTICLE IX
## MISCELLANEOUS

Section 1.

*Effectiveness.* These Bylaws shall become effective immediately upon their adoption of the Board of Directors.

Section 2.

*Amendment or Repeal.* Subject to any provisions of applicable law to the amendment of bylaws of nonprofit corporations, these Bylaws may be altered and may be repealed and new Bylaws adopted as follows*:*

(a) *By the Board.* Subject to the rights of the Members provided in these Bylaws or by law and the limitations set forth below, new Bylaws may be adopted or these Bylaws may be amended or repealed by approval of a majority vote of the Board; provided, however, that the Board may not, without the approval of the Members, specify or change any Bylaw that would:

   (1) Fix or change the number of authorized Directors;

   (2) Fix or change the minimum or maximum number of Directors;

   (3) Change from a fixed number of Directors to a variable number of Directors or vice versa;

   (4) Increase or extend the terms of Directors;

   (5) Allow any Director to hold office by designation or selection rather than by election by the Members;

   (6) Increase the quorum threshold for meetings of Members;

   (7) Repeal, restrict, create, expand, or otherwise change proxy rights;

   (8) Authorize cumulative voting by Members;

   (9) Materially and adversely affect the Members' right to voting; or

   (10) Extend the term of a Director beyond that for which the Director was elected.

(b) *By the Members.* New Bylaws may be adopted, or these Bylaws may be amended or repealed, by approval of the Members; provided, however, that if the Corporation has more than one (1) class of voting Members, any amendment that would materially and adversely affect the rights of a class as to voting or transfer in a manner different than it would another class must be approved by the Members of the materially and adversely affected class. Any Bylaw that requires a higher vote by the Members than otherwise required by law may not be altered, amended, or repealed except by that higher vote. No amendment may extend the term of a Director beyond that for which the Director was elected. Any provisions of these Bylaws providing for the designation or selection, rather than election, of any Director may be adopted, amended, or repealed only by approval of the Members, subject to the consent of the person or persons entitled to designate or select such Director.

10

Section 3.
 *Effectiveness of Amendments.* Any amendment to these Bylaws shall become effective immediately upon its adoption unless the Board of Directors or the Members of the Corporation, in adopting such amendment, provide that it is to become effective at a later date.