Marc Van Der Hout (Cal. Bar #80778)
Johnny Sinodis (Cal. Bar #290402)
Oona Cahill (Cal. Bar #354525)
**VAN DER HOUT LLP**
360 Post Street, Suite 800
San Francisco, CA 94108
Telephone: (415) 981-3000
Facsimile: (415) 981-3003
Email: ndca@vblaw.com

Conor T. Fitzpatrick (Mich. Bar #P78981)*
Daniel A. Zahn (D.C. Bar #90027403)*
**FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION (FIRE)**
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Telephone: (215) 717-3473
Email: conor.fitzpatrick@fire.org
Email: daniel.zahn@fire.org

Colin P. McDonell (Cal. Bar #289099)
**FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION (FIRE)**
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 717-3473
Email: colin.mcdonell@fire.org

*Admitted pro hac vice

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| THE STANFORD DAILY PUBLISHING CORPORATION, JANE DOE, and JOHN DOE, <br><br> *Plaintiffs*, <br><br> v. <br><br> MARCO RUBIO, in his official capacity as Secretary of State, and <br><br> MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, <br><br> *Defendants*. | Case No. 5:25-cv-06618-NW <br><br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION............................................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.      The Joint Statement of Undisputed Facts establishes Plaintiffs' standing............................ 3

II.     The government misconstrues Plaintiffs' suit and misapplies the test for First Amendment facial challenges. ............................................................................ 3

III.    The government's "ascending scale" of rights argument has no place in this First Amendment dispute.................................................................................... 6

IV.     The government repeatedly conflates exclusion authority with removal authority, a settled distinction that "runs throughout immigration law." ................................. 7

V.      Enjoining the government from revoking visas and deporting noncitizens based on protected speech is a permissible, definable remedy. ............................................. 9

VI.     The government's new argument that Congress wanted the executive to be able to deport based on speech gives the game away. ...................................................... 10

CONCLUSION ................................................................................................................. 10

PLAINTIFFS' RESPONSE TO SUPPLEMENTAL BRIEF           CASE NO. 5:25-cv-06618

**TABLE OF AUTHORITIES**

**Cases**

*Am. Ass'n of Univ. Professors v. Rubio*,
802 F. Supp. 3d 120 (D. Mass. 2025) ................................................................ 1, 2

*Am.-Arab Anti-Discrimination Comm. v. Reno*,
70 F.3d 1045 (9th Cir. 1995).............................................................. 1, 5, 6, 7

*Auris Health, Inc. v. Noah Med. Corp.*,
No. 22-cv-08073, 2023 WL 7284156 (N.D. Cal. Nov. 3, 2023) ................................................. 9

*Bridges v. Wixon*,
326 U.S. 135 (1945) ............................................................................. 1, 5, 6

*Chiles v. Salazar*,
146 S. Ct. 1010 (2026) ........................................................................... 2

*Demore v. Kim*,
538 U.S. 510 (2003) ............................................................................. 6

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025) ............................................................................. 4

*FTC v. EDebitPay, LLC*,
695 F.3d 938 (9th Cir. 2012)..................................................................... 9

*Hoye v. City of Oakland*,
653 F.3d 835 (9th Cir. 2011)..................................................................... 9

*Iancu v. Brunetti*,
588 U.S. 388 (2019) ............................................................................. 5

*Ibrahim v. Dep't of Homeland Sec.*,
669 F.3d 983 (9th Cir. 2012)................................................................... 6, 7

*Imperial Sovereign Ct. of Montana v. Knudsen*,
170 F.4th 820 (9th Cir. 2026).................................................................. 4, 5

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010) ......................................................................... 2, 4, 5

*Johnson v. Eisentrager*,
339 U.S. 763 (1950) ............................................................................. 7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).............................................................................. 3

*Massieu v. Reno,*
   915 F. Supp. 681 (D.N.J. 1996) ................................................................................. 8

*Matsumoto v. Labrador,*
   122 F.4th 787 (9th Cir. 2024).................................................................................... 5

*Moody v. NetChoice, LLC,*
   603 U.S. 707 (2024) ................................................................................................. 4

*N. Cheyenne Tribe v. Norton,*
   503 F.3d 836 (9th Cir. 2007) .................................................................................... 9

*New York Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ................................................................................................. 2

*NRA v. Vullo,*
   602 U.S. 175 (2024) ................................................................................................. 1

*Schmidt v. Lessard,*
   414 U.S. 473 (1974) ................................................................................................. 9

*SEC v. Murphy,*
   50 F.4th 832 (9th Cir. 2022)..................................................................................... 9

*Trump v. United States,*
   603 U.S. 593 (2024) ............................................................................................... 10

*United States v. Associated Press,*
   52 F. Supp. 362 (S.D.N.Y. 1943).............................................................................. 2

*United States v. Miller,*
   588 F.2d 1256 (9th Cir. 1978)................................................................................... 9

*United States v. Robel,*
   389 U.S. 258 (1967) ................................................................................................. 8

*United States v. Stevens,*
   559 U.S. 460 (2010) ............................................................................................ 5, 10

*United States v. Verdugo-Urquidez,*
   494 U.S. 259 (1990) ................................................................................................. 7

*Washington v. Trump,*
   145 F.4th 1013 (9th Cir. 2025).................................................................................. 9

*Washington v. Trump,*
   847 F.3d 1151 (9th Cir. 2017)................................................................................. 10

*Zadvydas v. Davis,*
   533 U.S. 678 (2001) ................................................................................................. 7

-iii-

**Statutes**

8 U.S.C.
    § 1182(a)(3)(C)(iii) ................................................................................................... 4, 10
    § 1227(a)(4)(C) ........................................................................................................ 4, 8

15 U.S.C.
    § 1681u(a) ..................................................................................................................... 5

50 U.S.C.
    § 1805(a)(2)(A) ............................................................................................................. 5
    § 1824(a)(2)(A) ............................................................................................................. 5
    § 1842 ........................................................................................................................... 5

**Other Authorities**

James Madison,
    The Report of 1800 (Jan. 7, 1800), *reprinted by* Nat'l Archives: Founders Online ..................... 6

-iv-

**INTRODUCTION**

The government seeks an unprecedented ruling, asking this Court to be the first in the history of the Republic to hold that the Constitution permits deporting lawfully present, law-abiding noncitizens for voicing opinions American citizens can freely express. That result would directly contravene the Supreme Court's command that "[f]reedom of speech and of press is accorded aliens residing in this country." *Bridges v. Wixon*, 326 U.S. 135, 148 (1945). It would likewise violate the Ninth Circuit's holding that "the values underlying the First Amendment require the full applicability of First Amendment rights to the deportation setting." *Am.-Arab Anti-Discrimination Comm. v. Reno* (*AADC*), 70 F.3d 1045, 1064 (9th Cir. 1995). And it would fly in the face of the First Amendment's core shackle on the government's authority: It may not "use [its] power … to punish or suppress disfavored expression." *NRA v. Vullo*, 602 U.S. 175, 188 (2024).

The government's supplemental brief tries to attack Plaintiffs' position by shifting attention to past instances of "exclusion[s] of foreign nationals," Defs.' Suppl. Pre-Trial Br. ("Gov't Suppl. Br.") 7, Dkt. No. 84, but Plaintiffs challenge only *removal* of already-present noncitizens based on protected speech, Verified Am. Compl. ¶¶ A–H & n.4, Dkt. No. 65 (emphasizing "Plaintiffs' lawsuit does not challenge the Secretary's separate exclusion authority"). The Ninth Circuit was crystal clear in *AADC* that "the foreign policy powers which permit the political branches great discretion to determine which aliens to exclude from entering this country do not authorize those political branches to subject aliens who reside here to a fundamentally different First Amendment" protection. 70 F.3d at 1056. The government tellingly fails to cite a single pre-2025 example of the government deporting (or revoking the visa of) a lawfully present noncitizen based on protected speech. *See Am. Ass'n of Univ. Professors v. Rubio* (*AAUP*), 802 F. Supp. 3d 120, 133 n.6 (D. Mass. 2025) (noting "there is no evidence of [the Deportation Provision] ever having been employed in the context of domestic speech"). The government's focus on "ascending scale" due process cases, Gov't Suppl. Br. 8, 10–11, is likewise a red herring, mustering no cases where that argument has been applied to diminish lawfully present noncitizens' First Amendment right to voice an opinion.

The government also continues to insist that a litigant must either challenge every possible application of a statute's text or limit the suit to the plaintiff's conduct. Again, the government is

-1-

wrong. In *John Doe No. 1 v. Reed*, 561 U.S. 186 (2010), the Supreme Court expressly approved a First Amendment lawsuit targeting a specific, speech-related subset of a statute's applications. And, just this term, the Supreme Court considered (and sustained) a First Amendment challenge to a Colorado statute "only as it applies to … talk therapy," even though the plaintiff "did not dispute that the statute has many valid applications." *Chiles v. Salazar*, 146 S. Ct. 1010, 1018 (2026).

As a final Hail Mary, the government takes issue with *the very concept of protected speech*, contending the First Amendment's protections are so nebulous that any relief would constitute a vague "obey the law" injunction. Here, too, the government is mistaken. The First Amendment presumptively protects *all* speech, with the government bearing the burden to demonstrate either that expression falls within an established category of unprotected speech or that it can satisfy the requisite level of scrutiny. Pls.' Suppl. Br. 4–5, Dkt. No. 87. In national security statutes, Congress repeatedly demarks protected speech as territory where the law's reach must end. Pls.' Suppl. Br. 5. The government supplies no reason why the same boundary is unworkable here.

The government's requested path leads to a perilous destination for free speech. If the president of the day can deport law-abiding noncitizens for expression the leader disfavors, President George W. Bush could have deported British comedian John Oliver for criticizing the Iraq war, President Obama could have deported British citizen Piers Morgan for criticizing the Affordable Care Act rollout on his *CNN* program, and President John Adams could have deported Scotland's James Callender for exposing federalist ally Alexander Hamilton's extramarital affair.

But government retribution against disfavored speakers, citizen or not, has no place in America's tradition of liberty, and the First Amendment ensures it has no shelter. "The First Amendment, said Judge Learned Hand, 'presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be, folly; but we have staked upon it our all.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (quoting *United States v. Associated Press*, 52 F. Supp. 362, 372 (S.D.N.Y. 1943)). At bottom, as Judge Young explained, "We are not, and we must not become, a nation that imprisons and deports people because we are afraid of what they have to tell us." *AAUP*, 802 F. Supp. 3d at 193. The Court should enter judgment for Plaintiffs.

-2-

**ARGUMENT**

**I.     The Joint Statement of Undisputed Facts establishes Plaintiffs' standing.**

The Court can quickly reject the government's perfunctory standing argument, Gov't Suppl. Br. 1–2, because the Verified Amended Complaint's allegations that this Court cited to deny the motion to dismiss based on standing are now undisputed facts in the parties' Joint Statement. [Dkt. No. 85.] *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (explaining a plaintiff must establish standing "with the manner and degree of evidence required at the successive stages of the litigation" and that the plaintiff's responsibility at the pleading stage to allege facts supporting standing becomes a responsibility to prove those facts at the merits stage).

The Joint Statement reflects that President Trump, Secretary Rubio, and prominent administration officials publicly promised to revoke visas based on protected speech and committed, for example, that "noncitizens 'pushing Hamas propaganda,' 'glorifying terrorists,' or otherwise engaging in 'anti-American' conduct 'can expect your visa will be revoked.'" J.S. 121.[1] It confirms the administration targeted lawfully present noncitizens for their speech, with internal documents pointing to Mahmoud Khalil's participation in pro-Palestinian protests, J.S. 168–81, Rümeysa Öztürk's op-ed, J.S. 198–215, and even a poem by Mohsen Mahdawi, J.S. 225–44. It also confirms that, fearing adverse immigration consequences based on those threats and actions, Jane Doe took down her social media account containing pro-Palestinian commentary, John Doe made his account private, and noncitizen *Stanford Daily* writers and editors declined Middle East–related assignments and some quit the paper. *See, e.g.*, J.S. 34–43, 53, 70. As these facts provided the basis for the Court to find Plaintiffs had sufficiently alleged standing, they now establish standing.

**II.     The government misconstrues Plaintiffs' suit and misapplies the test for First Amendment facial challenges.**

The government mistakenly asserts that Plaintiffs cannot "limit their challenge to the laws' application to 'protected speech,'" insisting they must either challenge *every* application of the Revocation and Deportation Provisions or only their potential application against each Plaintiffs'

---

[1] J.S. refers to the parties' Joint Statement of Undisputed Facts, Dkt. No. 85. The number refers to the fact number in the Joint Statement.

-3-

particular speech. Gov't Suppl. Br. 2–3. Plaintiffs' supplemental brief explained why that is wrong. Pls.' Suppl. Br. 2–4. The Supreme Court and circuit courts across the country recognize plaintiffs may challenge a discrete subset of a statute's applications, like when the Supreme Court permitted a challenge to Washington's Public Records Act solely with respect to its enforcement against referendum petitions. *John Doe No. 1*, 561 U.S. at 194.

So, here, Plaintiffs challenge the Revocation Provision solely with respect to visa revocations predicated on protected speech and the Deportation Provision solely with respect to rendering noncitizens deportable based on protected speech. And for the Deportation Provision, it is critical to remember the law *already prohibits* rendering someone deportable "because of the alien's past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States." 8 U.S.C. §§ 1182(a)(3)(C)(iii), 1227(a)(4)(C). But it allows that prohibition to be overridden if a Secretary of State "personally determines" the noncitizen "would compromise a compelling United States foreign policy interest." *Id.* The Verified Amended Complaint thus makes clear the Deportation Provision—the target of Plaintiffs' narrow challenge—is solely this grant of authority for the Secretary to override the bar on using protected speech to render someone deportable. Verified Am. Compl. ¶¶ 196–99.

The government also misapplies *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). The government argues the test for Plaintiffs' claims "is whether a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Gov't Suppl. Br. 2 (quoting *Moody*, 603 U.S. at 723). But that is the test for *overbreadth* challenges, which Plaintiffs do not bring here. Instead, Plaintiffs assert the Revocation and Deportation Provisions unconstitutionally discriminate against viewpoint and content when enforced based on protected speech. As the Ninth Circuit quite recently made clear, *Moody* "did not displace the longstanding and myriad precedents setting forth the tiered scrutiny analysis we apply to a facial claim challenging a law on the ground that it is an unconstitutional content-based restriction on speech." *Imperial Sovereign Ct. of Montana v. Knudsen*, 170 F.4th 820, 845 (9th Cir. 2026). The court relied on the Supreme Court's decision in *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461 (2025), which "appl[ied] tiered-scrutiny analysis to [a] facial content-based claim after *Moody*." *Imperial*

-4-

PLAINTIFFS' RESPONSE TO SUPPLEMENTAL BRIEF          CASE NO. 5:25-cv-06618

*Sovereign Ct.*, 170 F.4th at 845; *see also Iancu v. Brunetti*, 588 U.S. 388, 398–99 (2019) ("[T]he Government invokes our First Amendment overbreadth doctrine, and asks us to uphold the statute against facial attack because its unconstitutional applications are not 'substantial' relative to 'the statute's plainly legitimate sweep.' But to begin with, this Court has never applied that kind of analysis to a viewpoint-discriminatory law." (internal citation omitted)). Here, because Plaintiffs facially challenge the Provisions as content and viewpoint discriminatory solely with respect to enforcement against protected speech, the overbreadth test has no role to play. "[I]f a court concludes that a content-based speech restriction fails strict scrutiny, the analysis ends. The law is facially invalid and cannot be enforced against anyone." *Imperial Sovereign Ct.*, 170 F.4th at 845.

Even if an overbreadth analysis applied, the government makes a second mistake, assuming Plaintiffs would have to assess the Provisions' *nonspeech* applications as part of the laws' legitimate sweep. Gov't Suppl. Br. 3–8. Not so. The Supreme Court made clear in *John Doe No. 1* that when plaintiffs challenge a subset of a statute's applications, they must "satisfy our standards for a facial challenge to the extent of that reach." 561 U.S. at 194. Thus, even if an overbreadth analysis applied, the test would simply assess application of the Provisions *against protected speech* and evaluate the unconstitutional applications against any legitimate ones. And here, because the Supreme Court in *Wixon* held noncitizens are protected by the First Amendment and the Ninth Circuit in *AADC* held that protection extends to the deportation setting, *every* application of the Provisions against protected speech is unconstitutional. And, at the very least, any conceivable constitutional application would be substantially outweighed and outnumbered by unconstitutional applications.

Finally, the government also incorrectly asserts "protected speech" is an "undefined category" that "cannot meaningfully be evaluated." Gov't Suppl. Br. 3. But, as Plaintiffs explained in their supplemental brief, protected speech encompasses *all* speech outside narrow well-defined categories which are "long familiar to the bar." Pls.' Suppl. Br. 4 (quoting *United States v. Stevens*, 559 U.S. 460, 468 (2010)); *accord Matsumoto v. Labrador*, 122 F.4th 787, 811 (9th Cir. 2024). Protected speech also serves as a limiting modifier (*i.e.*, the same role it would play in an injunction here) in multiple national security statutes. *See, e.g.*, 50 U.S.C. § 1805(a)(2)(A); *id.* § 1824(a)(2)(A); *id.* § 1842; 15 U.S.C. § 1681u(a). Using the same standard (protected speech) for the same purpose

-5-

(clarifying that government actions may not rest on protected speech) as existing national security statutes is a sensible, manageable scope for an injunction and declaratory relief.

### III. The government's "ascending scale" of rights argument has no place in this First Amendment dispute.

The Supreme Court did not mince words: "Freedom of speech and of press is accorded aliens residing in this country." *Wixon*, 326 U.S. at 148. The First Amendment shackles the government from subjecting noncitizens to disfavored treatment because of their speech just the same as it does citizens. That is so, the Ninth Circuit explained, because the "Framers explicitly recognized that aliens within this country participate in a reciprocal relationship of societal obligations and correlative protection. 'As [noncitizens] owe, on one hand, a temporary obedience [to American laws], they are entitled, in return, to their protection and advantage.'" *AADC*, 70 F.3d at 1065 (quoting James Madison, The Report of 1800 (Jan. 7, 1800), *reprinted by* Nat'l Archives: Founders Online, https://perma.cc/BF76-6LCD)).

Yet, contrary to *Wixon* and *AADC* (two binding cases the government's supplemental brief ignores), the government contends that noncitizens present in the United States have "reduced" First Amendment protection that "varies" based on an "ascending scale." Gov't Suppl. Br. 8, 10. The government fails to cite any case applying the "ascending scale" doctrine from procedural due process caselaw to lawfully present noncitizens' First Amendment rights. Indeed, the government never explains what, if any, First Amendment protections it believes such noncitizens have—just that the "reduced" First Amendment rights of "nonimmigrant visa-holders" are insufficient for purposes of challenging the Revocation and Deportation Provisions. *Id.* at 10. The Ninth Circuit, however, considering similar arguments, held it is an "uncontested proposition" that student visa holders in the United States can assert claims under the First Amendment. *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 994 (9th Cir. 2012) (further holding that the plaintiff, whose student visa was revoked while traveling outside the United States, could assert First Amendment claims).

None of the government's cases establish that lawfully present noncitizens have "reduced" First Amendment protections; indeed, its cases do not involve the First Amendment at all. *Demore v. Kim*, 538 U.S. 510, 522–23 (2003), addressed a due process challenge to detention pending

-6-

removal, and *United States v. Verdugo-Urquidez*, 494 U.S. 259, 262, 269 (1990), held the Fourth Amendment did not apply to the search of homes in Mexico belonging to a noncitizen who resided in Mexico. Moreover, even if this "ascending scale" principle did apply in the First Amendment context, the cases the government cites do not suggest it would diminish the First Amendment rights of lawfully present noncitizens. The government's cases generally differentiate the rights of *resident* noncitizens from noncitizens residing outside of United States. *See, e.g.*, *Johnson v. Eisentrager*, 339 U.S. 763, 781 (1950) (rejecting "extraterritorial application" of due process protections to enemy aliens captured in China and detained in Germany); *Verdugo-Urquidez*, 494 U.S. at 269. None of these cases hold that visa holders, for example, have second-class constitutional rights as compared to other lawfully present noncitizens. The Ninth Circuit has repeatedly held that, in the First Amendment context, they do not. *See Ibrahim*, 669 F.3d at 994; *AADC*, 70 F.3d at 1064.

**IV.    The government repeatedly conflates exclusion authority with removal authority, a settled distinction that "runs throughout immigration law."**

The government relies on a bait-and-switch to defend its use of the Revocation and Deportation Provisions based on protected speech, conflating cases addressing *exclusion* of noncitizens (*i.e.*, refusal to permit entry) with authority discussing *removal* of lawfully present noncitizens. But Plaintiffs' opening brief noted that courts (including the Ninth Circuit) recognize an "essential distinction between exclusion and deportation." Mot. Summ. J. 16 n.7, Dkt. No. 32-1 (quoting *AADC*, 70 F.3d at 1064). As the Supreme Court explained, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The government's four proffered "examples" of prior similar exercises of immigration authority—Otto Skorzeny, Thomas Liaou, Ngo Dinh Nhu, and Ahmad El-Werfalli—are *exclusions*. Gov't Suppl. Br. 7 (discussing predecessor statute being "used to exclude"). What's more, the government supplies nothing suggesting the exclusions were speech-related. *See id*.

The government's invocation of Mario Ruiz Massieu's case hurts its position. Mr. Ruiz Massieu, the former Deputy Attorney General of Mexico, resigned and moved to the United States after asserting the Mexican government slow-walked the investigation of his brother's assassination.

-7-

PLAINTIFFS' RESPONSE TO SUPPLEMENTAL BRIEF          CASE NO. 5:25-cv-06618

*Massieu v. Reno*, 915 F. Supp. 681, 686–87 (D.N.J.), *rev'd on jurisdictional grounds*, 91 F.3d 416 (3d Cir. 1996). Before departing Mexico, he resigned his membership in the ruling Institutional Revolutionary Party ("PRI") and, "in a dramatic and widely publicized speech," said the PRI "was obstructing his search for the persons" involved in the assassination whom he "alleged to be very high-ranking members of the PRI." *Id.* at 687. The PRI-led government sought Mr. Ruiz Massieu's extradition back to Mexico on charges of embezzlement and obstructing justice, but multiple magistrate judges denied certification of extraditability, finding no probable cause he had committed the crimes. *Id.* at 687–88. The American government, seeking to preserve good relations with Mexico, invoked the INA's authority for the Secretary of State to render a noncitizen deportable if he determines that "there is a reasonable ground to believe your presence or activities in the United States would have potentially serious adverse foreign policy consequences." *Id.* at 689 (referring to now-8 U.S.C. § 1227(a)(4)(C)). Critically, the government *did not* invoke the Deportation Provision override allowing protected speech to serve as the basis of foreign policy-related removability.

Mr. Ruiz Massieu claimed the underlying deportation authority was unconstitutionally vague, and Judge Marianne Trump Berry, the only judge who has addressed any portion of the foreign policy removal ground's constitutionality, agreed. *Id.* at 689, 703. She noted the provision vests "virtually boundless" authority in granting the Secretary powers to deport simply by declaring it related to "foreign policy" reasons the Secretary "need neither explicate nor defend." *Id.* at 701–02. As the provision affords "unrestrained power" with "utterly no standards" guiding it, she held the provision void for vagueness. *Id.* at 702–03. Though the Third Circuit vacated Judge Berry's ruling on procedural grounds, *Massieu*, 91 F.3d at 417, (holding Mr. Ruiz Massieu failed to exhaust administrative remedies), the government cannot escape the reality that the sole instance when even the nonspeech portion of the foreign policy removability provision came under attack, it fell.

The government cannot cite a single pre-January 20, 2025, instance of using the Revocation or Deportation Provisions based on protected speech. There is no constitutional basis to open that door now. After all, "[i]t would indeed be ironic, if, in the name of national defense, we would sanction the subversion of one of those liberties … which makes the defense of the Nation worthwhile." *United States v. Robel*, 389 U.S. 258, 264 (1967).

-8-

**V.    Enjoining the government from revoking visas and deporting noncitizens based on protected speech is a permissible, definable remedy.**

The government's argument that Plaintiffs request improper relief lacks merit because Plaintiffs are seeking to enjoin the government from enforcing two statutes against a definable (and commonly carved out) category of activity: protected speech. The government focuses its ill-aimed fire trying to paint Plaintiffs' requested relief as an "obey the law" injunction. As an initial matter, that argument finds no home in the Ninth Circuit, which has "not adopted a rule against 'obey the law' injunctions per se." *FTC v. EDebitPay, LLC*, 695 F.3d 938, 944 (9th Cir. 2012); *see also SEC v. Murphy*, 50 F.4th 832, 852 n.9 (9th Cir. 2022) (citing *EDebitPay* and explaining same); *Auris Health, Inc. v. Noah Med. Corp.*, No. 22-cv-08073, 2023 WL 7284156, at *7 (N.D. Cal. Nov. 3, 2023) ("Defendants' attack on so-called 'obey the law' injunctions does not follow the law of this circuit.") In the Ninth Circuit, the granted injunction need only provide the government adequate notice of what conduct is prohibited. *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

In any event, Plaintiffs are not seeking an "obey the law" injunction, which vaguely orders a defendant to follow the law. *See SEC*, 50 F.4th at 852 n.9; *Schmidt*, 414 U.S. at 476. Instead, Plaintiffs request an injunction preventing Defendants from using specific statutes to render them deportable or to revoke their visas *based on protected speech*. Verified Am. Compl. ¶¶ C, D, G, H. That "language standing alone states a clear prohibition," *United States v. Miller*, 588 F.2d 1256, 1261 (9th Cir. 1978), and provides Defendants clear notice of the conduct they must avoid.

The government insists that forbidding it from revoking visas or deporting noncitizens based on "protected speech" provides it inadequate notice because it is an "undefined and undefinable term." Gov't Suppl. Br. 15. As explained in prior briefing, *see* Pls.' Suppl. Br. 4–5, and above, *see supra* p. 5–6, the government is wrong. The government offers no sensible reason why protected speech—the same standard used in national security surveillance statutes—is unworkable here.[2]

---

[2] Even if Plaintiffs had requested an "obey the law" injunction, and even if the Ninth Circuit forbade such injunctions, this Court could craft narrower relief. District courts "have considerable discretion in fashioning suitable relief and defining the terms of an injunction." *Washington v. Trump*, 145 F.4th 1013, 1037 (9th Cir. 2025); *see also Hoye v. City of Oakland*, 653 F.3d 835, 854–57 (9th Cir. 2011) (awarding narrower injunctive relief than plaintiff requested); *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 842–44 (9th Cir. 2007) (same). If this Court believes "protected speech"

-9-

PLAINTIFFS' RESPONSE TO SUPPLEMENTAL BRIEF          CASE NO. 5:25-cv-06618

**VI.    The government's new argument that Congress wanted the executive to be able to deport based on speech gives the game away.**

The government's 11th-hour legislative history argument does little more than cement its failure to disavow enforcing the Revocation and Deportation Provisions based on protected speech. The government argues that in 1990 Congress deliberately "narrowed the prior longstanding statute in order to increase protections for speech, while maintaining flexibility for the Executive Branch to exclude aliens for foreign-policy reasons." Gov't Suppl. Br. 6. Yet again, the government conflates the power to exclude with the power to deport. And even then, the government still fails to supply an example, even under the previous assertedly broader statute, of revoking a visa or deporting a lawfully present noncitizen based on protected speech.

The government appears to be under the impression that if Congress *intended* to allow the executive branch to revoke visas or deport noncitizens based on protected speech, that intent is dispositive so long as Congress included language ensuring it would be a rare occurrence. But Congress cannot bypass the Constitution just by including a "violate the Constitution sparingly" directive. Courts will "not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Stevens*, 559 U.S. at 480; *see also Trump v. United States*, 603 U.S. 593, 637 (2024) ("We do not ordinarily decline to decide significant constitutional questions based on the Government's promises of good faith.").

As the Ninth Circuit explained, "the Supreme Court has repeatedly and explicitly rejected the notion that the political branches have unreviewable authority over immigration or are not subject to the Constitution when policymaking in that context." *Washington v. Trump*, 847 F.3d 1151, 1162 & n.6 (9th Cir. 2017) (collecting cases). The First Amendment governs, and it prevents the political branches from revoking the visas of or deporting noncitizens based on protected speech.

**CONCLUSION**

For the above reasons, the Court should enter Judgment in favor of Plaintiffs.

---

is impermissibly vague, it could use the Deportation Provision's language and enjoin the government from revoking the visas of or deporting lawfully present noncitizens because of their "past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States." 8 U.S.C. § 1182(a)(3)(C)(iii).

-10-

Dated: April 23, 2026

Marc Van Der Hout (Cal. Bar #80778)
Johnny Sinodis (Cal. Bar #290402)
Oona Cahill (Cal. Bar #354525)
**VAN DER HOUT LLP**
360 Post Street, Suite 800
San Francisco, CA 94108
Telephone: (415) 981-3000
Facsimile: (415) 981-3003
Email: ndca@vblaw.com

Respectfully Submitted,

/s/ *Conor T. Fitzpatrick*
Conor T. Fitzpatrick (Mich. Bar #P78981)*
Daniel A. Zahn (D.C. Bar #90027403)*
**FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION (FIRE)**
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Telephone: (215) 717-3473
Email: conor.fitzpatrick@fire.org
Email: daniel.zahn@fire.org

Colin P. McDonell (Cal. Bar #289099)
**FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION (FIRE)**
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 717-3473
Email: colin.mcdonell@fire.org

*Admitted pro hac vice

*Counsel for Plaintiffs*

-11-

PLAINTIFFS' RESPONSE TO SUPPLEMENTAL BRIEF         CASE NO. 5:25-cv-06618