CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6488
FAX: (415) 436-6748
kelsey.helland@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STANFORD DAILY PUBLISHING CORP., *et al.*,<br><br>　　　Plaintiffs,<br><br>　v.<br><br>RUBIO, *et al.*,<br><br>　　　Defendants. | Case No. 5:25-cv-06618-NW<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL PRE-TRIAL BRIEF**<br><br>Date:　May 14, 2026<br>Time:　9:00 a.m.<br>Place:　Courtroom 3, 5th Floor<br><br>The Honorable Noël Wise |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................................1

II.   ARGUMENT .............................................................................................................................2

     A.     The Court Must Evaluate The Statutes' Entire Scope. .........................................2

     B.     Plaintiffs (Still) Fail To Define Protected Speech. ..............................................4

     C.     Even Limited To "Protected Speech," Plaintiffs' Claims Fail. ...........................6

III.  CONCLUSION .......................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abourezk v. Reagan*,
  592 F. Supp. 880 (D.D.C. 1984) ................................................................................................ 7, 8

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  591 U.S. 430 (2020) ...................................................................................................................... 4

*Blythe v. City of San Diego*,
  No. 24-cv-02211-GPC-DDL, 2025 WL 1570528 (S.D. Cal. June 2, 2025) ............................... 4

*Catholic Leadership Coal. of Tex. v. Reisman*,
  764 F.3d 409 (5th Cir. 2014) ........................................................................................................ 2

*Chiles v. Salazar*,
  146 S. Ct. 1010 (2026) ............................................................................................................. 2, 8

*Doe v. Burlew*,
  165 F.4th 525 (6th Cir. 2026) ....................................................................................................... 3

*Free Speech Coal. v. Paxton*,
  606 U.S. 461 (2025) ...................................................................................................................... 8

*Green Party of Tenn. v. Hargett*,
  791 F.3d 684 (6th Cir. 2015) ........................................................................................................ 2

*Haig v. Agee*,
  453 U.S. 280 (1981) ................................................................................................................... 5, 9

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952) ................................................................................................................... 4, 8

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) .............................................................................................................. 5, 7, 8, 9

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988) ........................................................................................................................ 8

*Iancu v. Brunetti*,
  588 U.S. 388 (2019) ...................................................................................................................... 8

*In re Ruiz-Massieu*,
  22 I&N Dec. 833 (1999) ............................................................................................................... 7

*John Doe No. 1 v. Reed*,
  561 U.S. 186 (2010)........................................................................................................... 2

*Kaahumanu v. Hawaii* ,
  682 F.3d 789 (9th Cir. 2012) ............................................................................................. 9

*McGuire v. Marshall*,
  50 F.4th 986 (11th Cir. 2022) ............................................................................................ 2

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024)................................................................................................... passim

*Nat'l Urban League v. Trump*,
  783 F. Supp. 3d 61 (D.D.C. 2025) ................................................................................ 4, 10

*NetChoice, LLC v. Bonta*,
  170 F.4th 744 (9th Cir. 2026) ............................................................................................ 3

*NetChoice, LLC v. Bonta*,
  770 F. Supp. 3d 1164 (N.D. Cal. 2025) ............................................................................. 3

*NetChoice, LLC v. Paxton*,
  No. 1:21-cv-00840, 2021 WL 4311221 (W.D. Tex. Sept. 22, 2021) ................................. 3

*NRA v. Vullo*,
  602 U.S. 175 (2024)............................................................................................................ 8

*Palestine Info. Off. v. Shultz*,
  853 F.2d 932 (D.C. Cir. 1988) ........................................................................................... 9

*Pollak v. Wilson*,
  No. 22-CV-49-ABJ, 2024 WL 5164934 (D. Wyo. Oct. 25, 2024)...................................... 4

*Project Veritas Action Fund v. Rollins*,
  982 F.3d 813 (1st Cir. 2020)........................................................................................... 2, 6

*Project Veritas v. Schmidt*,
  125 F.4th 929 (9th Cir. 2025) ......................................................................................... 3, 6

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015)............................................................................................................ 8

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999)........................................................................................................... 10

*Seminole Tribe of Fla. v. Fla.*,
  517 U.S. 44 (1996)............................................................................................................. 2

*United States v. Hansen*,
   599 U.S. 762 (2023) ............................................................................................... 6, 10

*United States v. Sup. Ct. of N.M.*,
   839 F.3d 888 (10th Cir. 2016) ..................................................................................... 2

**Statutes**

8 U.S.C. § 1182 ................................................................................................................ 7, 9
8 U.S.C. § 1201 ...................................................................................................................... 8
8 U.S.C. § 1227 ...................................................................................................................... 9
8 U.S.C. § 1252 .................................................................................................................... 10

## I.    INTRODUCTION

Plaintiffs' Supplemental Brief ignores the central question raised by their claims:  whether the legitimate scope of the statutes they seek to overturn is substantially outweighed by their unconstitutional applications.  *See generally* Dkt. 87 ("Pltfs.' Supp. Br.").  Plaintiffs also yet again ignore that the federal government's interests in national security and foreign policy are "compelling," and that foreign nationals have reduced constitutional protections based on their relatively limited connections to this country.  The government has repeatedly explained these points over the course of this action, including most recently in its Supplemental Brief.  *See generally* Dkt. 84 ("USA Supp. Br.").  Plaintiffs' continued silence in response speaks volumes.

Rather than address these key points, Plaintiffs try to pull together strands from a range of disparate First Amendment doctrines to save their pseudo-facial claims.  But to no avail.

*First*, Plaintiffs cannot artificially limit their facial challenges to applications against "protected speech."  Contrary to Plaintiffs' argument, the Supreme Court has not held that such pseudo-facial claims can go forward.  But the Court actually has held that parties cannot dodge the strict requirements of facial challenges by focusing their attacks on certain "heartland" applications of a statute.  That means that, when evaluating the legitimate scope of the statutes at issue here, the Court must consider all of their applications, not just those that Plaintiffs are seeking to challenge.

*Second*, Plaintiffs still fail to meaningfully define protected speech.  To be sure, they do now argue that protected speech means all speech that isn't unprotected.  But this does not move the ball.  Whether any particular speech is "protected" or "unprotected" depends on a host of case-specific factors.  The Court cannot determine in the abstract how to draw that line.  And other courts have rejected similar First Amendment challenges as unripe on exactly this basis.

*Third*, even on their own terms, Plaintiffs' claims here fail.  For whatever reason, even though they admit they must satisfy the standard for a facial challenge, Plaintiffs make no effort to weigh the statutes' relative constitutional and impermissible scopes.  The government has previously explained why this weighing requires the statutes to be upheld.  Plaintiffs instead argue that the possibility for viewpoint-based enforcement renders the statutes unconstitutional, but again, they fail to address the unique nature of foreign-policy legislation.  And Plaintiffs try to rely on a small number of past

DEFENDANTS' RESPONSE TO SUPP. PRE-TRIAL BRIEF
5:25-CV-06618-NW                                             1

enforcement actions, without ever comparing those against the statutes' plainly legitimate scope.

For all of these reasons, the Court should deny Plaintiffs' claims and enter judgment in favor of the government.

## II.    ARGUMENT

### A.    The Court Must Evaluate The Statutes' Entire Scope.

Plaintiffs first argue that their "hybrid" facial/as-applied challenge was endorsed by the Supreme Court in *John Doe No. 1 v. Reed*, 561 U.S. 186 (2010). *See* Pltfs.' Supp. Br. 2. But *Reed* actually rejected the plaintiffs' theory in that case; it held that the "disclosure [of petition signatories' identities] under the [Washington Public Records Act] would not violate the First Amendment with respect to referendum petitions in general." 561 U.S. at 202. Thus, while the Supreme Court assumed for purposes of its decision that plaintiffs could bring such a claim, that assumption was not necessary to its decision, because the plaintiffs' claim failed on its own terms. *See id. Reed*'s discussion of such hybrid claims is therefore dicta. *See, e.g.*, *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 66-67 (1996) (explaining that it is only "those portions of the opinion necessary to [the] result" that bind future courts).

Plaintiffs also cite a handful of circuit court decisions discussing *Reed*'s dicta. *See* Pltfs.' Supp. Br. 3-4.[1] Most of these cases either mentioned the issue in passing or rejected the plaintiffs' claims. *See McGuire v. Marshall*, 50 F.4th 986, 1004 (11th Cir. 2022) (distinguishing plaintiff's *ex post facto* claim from "facial or quasi-facial challenges"); *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 692 (6th Cir. 2015) (challenge to entire scope of the statute); *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (facial challenges to the statutes in full, and as-applied challenges to certain applications as to plaintiffs). Just two of these cases relied on the dicta to recognize such hybrid claims, in vastly different circumstances than those presented here. *See Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 826 (1st Cir. 2020) (*Project Veritas I*) (analyzing claim that state law was "facially" unconstitutional "only insofar as it applies to bar the secret, nonconsensual audio recording of police officers discharging their official duties in public spaces"); *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 916 (10th Cir. 2016) (analyzing preemption of state law as applied to federal prosecutors).

---

[1] Strangely, Plaintiffs also cite the Supreme Court's decision in *Chiles v. Salazar*, 146 S. Ct. 1010 (2026), which was a straightforward "as-applied" challenge, *id.* at 1018.

DEFENDANTS' RESPONSE TO SUPP. PRE-TRIAL BRIEF
5:25-CV-06618-NW                                    2

More importantly, Plaintiffs' cases were all decided before the Supreme Court's recent decision in *Moody v. NetChoice, LLC*, which expressly held that, "in the First Amendment context, facial challenges are disfavored, and neither parties nor courts can disregard the requisite inquiry into how a law works *in all of its applications*." 603 U.S. 707, 744 (2024) (emphasis added). Notably, the plaintiff in *Moody* had even attempted to limit their requested relief to a declaration that the Texas law at issue was "unlawful as applied to Plaintiffs' members." Compl., *NetChoice, LLC v. Paxton*, No. 1:21-cv-00840, 2021 WL 4311221 (W.D. Tex. Sept. 22, 2021). The Supreme Court nevertheless flatly rejected the idea that parties could carve out certain applications of a statute for a litigative challenge. *See id.* at 724 (faulting parties and lower courts for "not address[ing] the full range of activities the laws cover, and measur[ing] the constitutional against the unconstitutional applications").

And indeed, cases decided after *Moody* have taken its message to heart. For example, in *NetChoice, LLC v. Bonta*, the Ninth Circuit recently vacated a decision by Judge Labson Freeman of this District on the ground that the District Court improperly confined its First Amendment analysis to certain "heartland" applications challenged by the plaintiff. 170 F.4th 744, 758 (9th Cir. 2026). As Plaintiffs argue here, the District Court had relied on *Reed* to conclude that "a plaintiff may assert a First Amendment facial challenge to a specific application of a statutory provision." *NetChoice, LLC v. Bonta*, 770 F. Supp. 3d 1164, 1197 (N.D. Cal. 2025). The Ninth Circuit disagreed, explaining that the plaintiff's "focus on applications of the [statute] that may implicate protected expression does not relieve it from the burden to demonstrate that these applications 'substantially outweigh' applications that do not, as *Moody* requires." 170 F.4th at 758. "At bottom, to properly assert a facial challenge, it is [the plaintiff's] burden to establish the [the law's] 'full range' by way of its coverage definition." *Id.* at 759.

In fact, to the government's knowledge, there are only six decisions nationwide that cite both *Reed* and *Moody* for this issue, and to the extent it has been raised, these cases have focused on the full scope of the challenged laws. *See id.* (District Court decision); *see also Doe v. Burlew*, 165 F.4th 525, 533 (6th Cir. 2026) ("The district court's evaluation of the Kentucky law in this case suffers from the same problems as the circuit courts' evaluation of the social-media laws in *NetChoice*."); *Project Veritas v. Schmidt*, 125 F.4th 929, 961 (9th Cir. 2025) (*Project Veritas II*) ("We do not confine our facial overbreadth analysis to the 'heartland applications' alleged by the parties; instead, we must 'address the

full range of activities' that the statute covers."); *Blythe v. City of San Diego*, No. 24-cv-02211-GPC-DDL, 2025 WL 1570528, at *13 (S.D. Cal. June 2, 2025) ("Plaintiff fails to carry his burden here because his arguments almost exclusively focus on his own intended speech activities."); *Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61, 88 (D.D.C. 2025) ("Plaintiffs attack the executive orders and ask for relief in ways confirming that their challenges are facial and not as-applied."); *Pollak v. Wilson*, No. 22-CV-49-ABJ, 2024 WL 5164934, at *9 (D. Wyo. Oct. 25, 2024) ("We will therefore assess the constitutionality of the Personnel Policy assuming it includes this broader interpretation.").

Remarkably, Plaintiffs fail to even acknowledge *Moody*'s existence, even though the government has repeatedly cited it in prior briefing. *Compare generally* Pltfs.' Supp. Br., *with* Dkt. 68 at 5; Dkt. 48 at 8-9. But Plaintiffs' silence cannot overcome the Supreme Court's and the Ninth Circuit's clear instructions. To properly consider Plaintiffs' claims here, the Court must determine the full scope of the statutes' reach and then evaluate their constitutional applications against any unconstitutional ones.

**B.    Plaintiffs (Still) Fail To Define Protected Speech.**

Plaintiffs next argue that "protected speech" is a term of art, allowing them to rely on that category for purposes of their challenge here. *See* Pltfs.' Supp. Br. 4-5. Plaintiffs assert that "'protected speech,' far from being an unknowable quantity, includes all speech other than that falling within traditional categories of unprotected speech." *Id.* at 5. Thus, in Plaintiffs' view, the challenged statutes here can be declared unconstitutional as to every instance of such speech, no matter the circumstances of the speech at issue or the government's interest in the individual case. *See id.*

The problem with this view, as the government has previously explained, is that whether any particular speech is in fact protected by the First Amendment is a case-specific analysis that depends on the identity of the speaker, the nature of the speech, and the government's interest in regulation. *See, e.g.*, USA's Supp. Br. 8-10 (citing cases). Indeed, the Supreme Court has repeatedly recognized that a foreign national may be entitled to reduced First Amendment protections compared to a citizen, even for the same speech. *See, e.g.*, *Moody*, 603 U.S. at 747 (Barrett, J., concurring) ("[A] social-media platform's foreign ownership and control over its content-moderation decisions might affect whether laws overriding those decisions trigger First Amendment scrutiny.") (citing *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430 (2020)); *Harisiades v. Shaughnessy*, 342 U.S. 580, 586 (1952)

(recognizing that while "it often is difficult to determine whether ambiguous speech is advocacy of political methods or subtly shades into a methodical but prudent incitement to violence," "the Constitution enjoins upon us the duty, however difficult, of distinguishing between the two," and holding that "the First Amendment does not prevent the deportation of these aliens").

Similarly, the Court has recognized in a variety of contexts that the government's interests in foreign policy and national security can overcome even citizens' First Amendment rights in certain circumstances. *See, e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010) (*HLP*) ("The First Amendment issue before us is more refined than either plaintiffs or the Government would have it. . . . It is instead whether the Government may prohibit what plaintiffs want to do—provide material support to the PKK and LTTE in the form of speech."); *Haig v. Agee*, 453 U.S. 280, 309 (1981) ("[W]hen there is a substantial likelihood of 'serious damage' to national security or foreign policy as a result of a passport holder's activities in foreign countries, the Government may take action to ensure that the holder may not exploit the sponsorship of his travels by the United States.").

In short, context matters. The same "speech" may or may not be "protected" if it is made by a different speaker with different connections to this country, or at different times when the United States' foreign-policy interests are different. Plaintiffs' argument that "the government provides no reason why that boundary is constitutionally unmanageable here," Pltfs.' Supp. Br. 5, simply ignores that the government has, repeatedly, provided this very explanation. It is Plaintiffs who continue to fail to address the case-specific nature of this inquiry, or even acknowledge the government's authorities.

Plaintiffs also point to a handful of statutes that preclude certain law-enforcement actions from being taken solely on the basis of "activities protected by the first amendment to the Constitution." Pltfs.' Supp. Br. 5. But of course, any particular law enforcement officer (or judge) can make a determination whether any particular activities are or are not protected by the First Amendment by considering all of the relevant circumstances in each case. The fact that statutes use such language with the expectation that they will be applied in individual cases does not mean that similar language provides a workable standard for this Court to declare other statutes facially unconstitutional.

Indeed, other courts have resolved this concern by holding that plaintiffs' claims were not "ripe" for Article III purposes when they failed to articulate meaningful standards for their pseudo-facial

DEFENDANTS' RESPONSE TO SUPP. PRE-TRIAL BRIEF
5:25-CV-06618-NW                                5

challenges.  For example, in *Project Veritas I*, the First Circuit held that the plaintiffs' "vague yet sweeping definition" of "individuals who lack any reasonable expectation of privacy" "fail[ed] to ensure that the 'contours' of this challenge to [the statute were] 'sharply defined.'"  982 F.3d at 842; *see also id.* at 843 (same, for definition of "government officials discharging their duties in public spaces").  As the court explained, "[t]he concern that this disconnect renders this dispute hypothetical and abstract rather than real and concrete is compounded by the fact that the First Amendment analysis might be appreciably affected by the type of government official who would be recorded."  *Id.* at 843.  "It is hardly clear that a restriction on the recording of a mayor's speech in a public park gives rise to the same First Amendment concerns as a restriction on the recording of a grammar school teacher interacting with her students in that same locale while on a field trip," or "public works employees conversing while tending to a city park's grounds."  *Id.*; *cf. Project Veritas II*, 125 F.4th at 942 (distinguishing *Project Veritas I* on the ground that, in the new case, "Project Veritas's as-applied challenge concerns six specific courses of intended conduct, and we understand that Project Veritas's request for relief is limited to these particular activities").

This exact same reasoning applies here.  Plaintiffs cannot use a vague and overbroad definition of "protected speech" to challenge these duly enacted congressional statutes.  The Court should deny Plaintiffs' claims.

**C.      Even Limited To "Protected Speech," Plaintiffs' Claims Fail.**

Even if the Court were to limit its consideration to the statutes' applications to "protected speech," and even if the Court could discern what that term means for purposes of this case, Plaintiffs' claims would still fail because the statutes' legitimate uses in this context outweigh any constitutionally problematic ones.  *See* USA Supp. Br. 10-15.

The Supreme Court has made clear that "invalidation for overbreadth is strong medicine that is not to be casually employed."  *United States v. Hansen*, 599 U.S. 762, 770 (2023) (cleaned up).  "To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep."  *Id.*  "In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case."  *Id.*; *see also Moody*, 603 U.S. at 724 (facial invalidation is only appropriate "if the law's unconstitutional

DEFENDANTS' RESPONSE TO SUPP. PRE-TRIAL BRIEF
5:25-CV-06618-NW                                        6

applications substantially outweigh its constitutional ones").

Remarkably, despite spending several pages arguing that they are allowed to bring a pseudo-facial challenge here, Plaintiffs never explain how they actually satisfy the standard for such a claim. *See* Pltfs.' Supp. Br. 6-7. Although Plaintiffs *admit* that they must satisfy the standard for facial claims at least "to the extent of [the] reach" of their claims, *id.* 3, wholly absent from Plaintiffs' analysis is any attempt to delineate the statutes' legitimate or illegitimate scope and weigh the one against the other, *see generally id.* As the government has explained, the statutes survive this test due to the important government interests they serve and foreign nationals' reduced First Amendment protections in this context. *See* USA Supp. Br. 3-13.

Plaintiffs have previously argued that "because Plaintiffs challenge the Provisions solely regarding the statutes' use based on protected speech, and because the Provisions cannot constitutionally be enforced based on protected speech, *every* application in Plaintiffs' challenge violates the Constitution." Dkt. 32-1 at 14. The position is breathtaking. Plaintiffs argue that the government can *never* take immigration enforcement action based on a foreign national's speech, no matter the foreign-policy or national-security consequences. In Plaintiffs' view, if the former head of state of a foreign country visits the United States and speaks out against a peace deal the United States is trying to negotiate, thereby undermining such negotiations, the government would be powerless to remove that individual.[2] Or if the government learned after admitting a foreign visitor that he was a member of a political party that supported ethnic cleansing, the United States could not remove him on that basis.[3] As the government has explained, Congress carefully crafted the current framework to specifically allow for speech-based immigration enforcement actions and provided *congressional* oversight over the Executive's use of the statutes in that way. *See* USA Supp. Br. 4-7.[4] Plaintiffs want to take a sledgehammer to that framework and prevent any such enforcement actions no matter the consequences.

Instead of engaging in the necessary balancing now, Plaintiffs argue that the statutes are facially

---

[2] *See, e.g.*, *In re Ruiz-Massieu*, 22 I&N Dec. 833 (1999).

[3] *See, e.g.*, *Abourezk v. Reagan*, 592 F. Supp. 880, 885 n.14 (D.D.C. 1984).

[4] Plaintiffs do not allege that the Executive has failed to provide any notifications to Congress that would be required by law. *See generally* Dkt. 65, 85; *see also* 8 U.S.C. § 1182(a)(3)(C)(iv).

unconstitutional simply because they allow for the consideration of the speaker's viewpoint in the government's enforcement decisionmaking. *See* Pltfs.' Supp. Br. 6-7. Plaintiffs cite a handful of as-applied challenges concerning specific viewpoint-based enforcement actions for the unsupported proposition that the government can never discriminate based on the content of speech. *See id.* (citing *Chiles*, 146 S. Ct. at 1021 (as-applied challenge to regulation of specific speech); *NRA v. Vullo*, 602 U.S. 175 (2024) (challenge to specific enforcement actions); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) (challenge to damages award based on specific parody article)). At most, these cases stand for the proposition that viewpoint-based enforcement actions may be subject to strict scrutiny. They do not support Plaintiffs' argument that content-based enforcement actions are always unconstitutional per se. *Cf. HLP*, 561 U.S. at 27, 40 ("[I]n regulating the particular forms of support that plaintiffs seek to provide to foreign terrorist organizations, Congress has pursued that objective consistent with the limitations of the First and Fifth Amendments."); *Harisiades*, 342 U.S. at 586.

Plaintiffs also cite a few cases where the text of the laws themselves evinced content-based discrimination. So, in *Iancu v. Brunetti*, the Supreme Court held that a statute's proscription of "immoral" and "scandalous" matter was "viewpoint-based" and "substantially overbroad." 588 U.S. 388, 394, 399 (2019). Similarly, in *Reed v. Town of Gilbert*, the Court held that an ordinance imposing more burdensome restrictions on signs concerning certain groups' events contained "content-based regulations of speech that cannot survive strict scrutiny." 576 U.S. 155, 159 (2015). And in *Free Speech Coalition v. Paxton*, the Supreme Court analyzed a statute imposing age-verification requirements on pornographic websites, ultimately holding that the law permissibly regulated the content of unprotected speech and survived intermediate scrutiny. 606 U.S. 461, 492 (2025).

Here, by contrast, the text of the visa-revocation and foreign-policy-removal provisions does not discriminate on the basis of any particular viewpoint. *See* USA Supp. Br. 4 (quoting the text). The statutes do not say that only speech concerning certain issues, or only speech expressing certain messages, can form the basis for enforcement actions. Again, the visa-revocation provision does not mention speech at all. *See* 8 U.S.C. § 1201(i). And the foreign-policy-removal provision authorizes government officials to take immigration-enforcement actions when they determine that an alien's continued presence in the United States "would have potentially serious adverse foreign policy

consequences" or, as most relevant here, "would compromise a compelling United States foreign policy interest" if enforcement is "because of the alien's past, current, or expected beliefs, statements," that "would be lawful within the United States." 8 U.S.C. §§ 1182(a)(3)(C), 1227(a)(4)(C)(i)-(ii). Under the statutes here, the very same speech may or may not compromise foreign-policy interests based on changed international circumstances and the federal government's priorities. This is not viewpoint-based discrimination of the kind at issue in *Iancu* or *Reed*.

To be sure, the statutes plainly allow government officials to *consider* the content of the speech at issue, in order to evaluate whether it compromises the United States' foreign-policy interests. But that is a far cry from a statute that expressly burdens certain kinds of speech. And indeed, it could not be otherwise. *See, e.g.*, *Exclusion and Deportation of Aliens: Hearing before the Subcomm. on Immigration, Refugees and International Law of the H. Comm. on the Judiciary*, 100th Cong., 1st Sess. 30, 40 (1987). Given the inherently uncertain and rapidly changing nature of foreign affairs and national security, Congress could not have drafted a narrower law while still preserving the government's ability to remove foreign nationals for foreign-policy reasons. *See, e.g.*, *HLP*, 561 U.S. at 35-36; *Palestine Info. Off. v. Shultz*, 853 F.2d 932, 944 (D.C. Cir. 1988).

Plaintiffs cite the Ninth Circuit's decision in *Kaahumanu v. Hawaii* for the proposition that "unbridled discretion to limit speech is viewpoint discrimination per se." Pltfs.' Supp. Br. 7 (citing 682 F.3d 789 (9th Cir. 2012)). That case considered regulations allowing the State of Hawai'i to modify or revoke wedding permits on "unencumbered beaches." 682 F.3d at 806. The court applied its test for "restrictions on access" to "nonpublic forums," which included a "viewpoint neutrality requirement." *Id.* And the court held that, absent "guiding standards," the regulations created too great a risk of "unconstitutional viewpoint discrimination by the licensing official." *Id.* at 807.

*Kaahumanu* is simply inapposite here. The case did not concern the United States' foreign-policy or national-security interests, which the Supreme Court has respectively described as "a governmental interest of great importance" and said of which that "no governmental interest is more compelling." *Haig*, 453 U.S. at 307. The Ninth Circuit was not faced with an area that required flexibility on the part of government decisionmakers. It did not confront a law requiring an apex official to personally find a "compelling" interest in enforcement. Rather, that case concerned "time, place, and

manner" restrictions for weddings on beaches with no safeguards.  Plaintiffs cannot use such restrictions to overturn federal immigration statutes and impair the United States' ability to conduct foreign policy.

Otherwise, Plaintiffs simply rely on a handful of past enforcement actions taken against third parties under the statutes.  *See* Pltf.'s Supp. Br. 7-11.  The government disputes that those prior enforcement actions violated the First Amendment, and separate cases addressing those questions remain pending.  *See, e.g.*, *Khalil v. Trump*, No. 25-2162, ECF 152 (3d. Cir. Apr. 14, 2026) (describing status of immigration proceedings); *Mahdawi v. Trump*, No. 25-1113, ECF 227 (2d Cir. Mar. 16, 2026) (same); *Suri v. Trump*, No. 25-1560, ECF 123 (4th Cir. Mar. 17, 2026) (oral argument).  Indeed, Plaintiffs' pseudo-facial challenge is all the more inappropriate here because individuals subject to enforcement actions can argue in their individual cases that enforcement was unconstitutional.  *See Hansen*, 599 U.S. at 770; *see also*, *e.g.*, Dkt. 33 at 4-5; 8 U.S.C. § 1252(a)(2)(D) (preserving courts of appeals' jurisdiction over constitutional claims in review of removal proceedings); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) (holding challenges to removal, including First Amendment ones, must be brought in removal proceedings).  While the government continues to litigate these separate cases, their existence confirms that there are less drastic ways to vindicate the free-speech rights of any individuals who actually face enforcement action on that potential basis.

But for purposes of this case, such limited examples of enforcement do not and cannot demonstrate that the laws' unconstitutional applications "substantially outweigh" their legitimate uses. *Moody*, 603 U.S. at 724; *see also, e.g.*, *Nat'l Urban League*, 783 F. Supp. 3d at 101 (limited examples of potentially over-aggressive enforcement did "not establish the 'lopsided ratio' justifying the 'strong medicine' of facial invalidation").  That latter question—the one at issue in this case—depends on the statutes' scope and purpose, not the rationale of individual enforcement actions.

Facial challenges like Plaintiffs' threaten to "destro[y] some good along with the bad." *Hansen*, 599 U.S. at 770.  Courts are rightly skeptical of the broad relief requested by such cases. *See id.*  The Court should reject Plaintiffs' challenge here.

## III.    CONCLUSION

For the foregoing reasons, following the trial on the papers in this matter, the Court should deny all of Plaintiffs' claims and enter final judgment in favor of Defendants.

Dated:  April 23, 2026

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Kelsey J. Helland*
KELSEY J. HELLAND
Assistant United States Attorney

Attorneys for Defendants